Allen SOKOLOFF

v.

The UNITED STATES.

No. 596–82C.

United States Claims Court.

Dec. 14, 1983.

Irving Achtenberg, Kansas City, Mo., for plaintiff. Achtenberg & Achtenberg, Kansas City, Mo., of counsel.

Helene M. Goldberg, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. Judith E. Cohn, Dept. of Justice and Lee Patten, Internal Revenue Service, Washington, D.C., of counsel.

OPINION

LYDON, Judge:

In this civilian pay case, plaintiff challenges his removal, for cause, from federal employment by the Internal Revenue Service (IRS). This removal action was affirmed by the Federal Employee Appeals Authority, United States Civil Service Commission (FEAA). The Appeals Review Board, Civil Service Commission (ARB) (now Office of Appeals, Merit Systems Protection Board (MSPB)) subsequently denied plaintiff's request to reopen and reconsider the FEAA decision. Thereafter, plaintiff filed suit in the United States District Court for the Western District of Missouri, which suit was transferred to this court, at plaintiff's request, on November 19, 1982. This suit is not governed by the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 since plaintiff's employment was terminated prior to the effective date of that act. *See Gaskins v. United States Postal Service*, 221 Ct.Cl. 918, 919–20 (1979). Both parties have moved for summary judgment, each asserting there are no genuine issues of material fact in dispute. Upon consideration of the submissions of the parties, and without oral argument, it is concluded that defendant's motion for summary judgment should be granted.

I.

On January 31, 1977, plaintiff's duty station was the Office of District Director of the Internal Revenue Service (St. Louis, Missouri), Audit Division, Examination Branch 2, Group 7, Kansas City, Missouri. Plaintiff was employed as a Tax Auditor, GS–9. At that time, plaintiff had almost 12 years of federal service. He had received a career conditional appointment as a Social Insurance Claims Examiner, GS–5, on May 9, 1965. On July 5, 1966, he had received a career conditional appointment as a Tax Technician, GS–7, and had completed his probationary period in this position on July 4, 1967. Plaintiff was promoted to the position of Tax Technician, GS–9, on July 16, 1967.

On January 31, 1977, plaintiff received a notice of proposed adverse action from the Chief of the Audit Division informing him of his proposed removal from his position based on unsatisfactory work performance. This notice set forth three reasons for this proposed action, each of which was supported by specifications. The January 31st letter also notified plaintiff of all his procedural rights.

Plaintiff submitted a written reply to this proposed adverse action on April 8, 1977, after having provided an oral reply on March 4, 1977. On April 26, 1977, the Chief of the Audit Division, "after careful consideration of the evidence file and the efforts of the Group Manager to improve Mr. Sokoloff's performance," recommended to the District Director that plaintiff be removed for the reasons stated in the January 31, 1977 letter of proposed adverse action. On April 28, 1977, the District Director informed plaintiff of his decision to remove him. In this letter, the District Director set forth, and discussed, the reasons for this action.

Plaintiff appealed the removal decision of April 28, 1977, to the St. Louis FEAA office on May 4, 1977. At plaintiff's request, a hearing was held before an Appeals Officer (Hearing Examiner) on September 6, 1977. At this hearing, the agency withdrew one of the three reasons it had advanced in its January 31, 1977, notice of proposed adverse action.

By decision dated December 19, 1977, the FEAA, in sustaining plaintiff's removal, found, *inter alia,* that no procedural error tainted the removal, that the two remaining reasons and the underlying specifications were fully supported by the evidence, and that the agency was not required to file for disability retirement on plaintiff's behalf since, as plaintiff had acknowledged, plaintiff's ill-health was not responsible for his work performance deficiencies.

In its December 19th decision the FEAA informed plaintiff, in pertinent part as follows: "The decision of the Appeals Officer is final and there is no further right of appeal. This means that the decision of the Appeals Officer marks the exhaustion of those administrative remedies which must precede resort to the courts." This decision also advised plaintiff that Civil Service Commission Regulations did permit the ARB, in its discretion, to reopen and reconsider any previous decision of an Appeals Officer on the ground of (1) new and material evidence; (2) erroneous interpretation of law or regulation or misapplication of established policy; or (3) precedential nature of previous decision.

Thereafter, plaintiff filed a request with the ARB to reopen and review the FEAA decision upholding plaintiff's removal. In this request, plaintiff contended that the Appeals Officer erroneously interpreted certain regulations relating to (a) prohibition of inference of guilt from plaintiff's lack of rebuttal to the charges against him; (b) oral reply; and (c) progressive discipline. On October 25, 1979, the Office of Appeals denied plaintiff's request on the ground it did not meet any of the regulatory criteria for reopening the previous decision of an Appeals Officer as set forth in 5 U.S.C.R. §§ 772.310 and 772.312 (1978).[1]

---

1. Defendant asserts that plaintiff, in failing to present to the ARB the procedural violations which the Federal Employee Appeals Authority (FEAA) found to be without merit, has failed to exhaust his administrative remedies and thus should be barred from claiming herein that his removal was procedurally defective. Defendant cites *Miatech v. United States,* 213 Ct.Cl. 688 (1977) and a number of other cases in which failure to exhaust administrative remedies was held to preclude judicial consideration of issues not presented at the final administrative level. However, all those cases are inapposite. Here, plaintiff was told by the FEAA that he had exhausted his administrative remedies on the procedural errors he asserts in this case. He could not appeal those issues to the ARB because of regulatory restrictions as outlined in the text, *supra.* Accordingly, there is no basis, in law or in fact, for defendant's assertion that plaintiff failed to exhaust his administrative remedies on the procedural error issues he raises in this case since he could not appeal those procedural issues to the ARB. *See Bur v. United States,* 224 Ct.Cl. 52, 57, 621 F.2d 415, 417–18 (1980); *Athas v. United States,* 220 Ct.Cl. 96, 102–104, 597 F.2d 722, 724–25 (1979); *see also Piccone v. United*

## II.

Plaintiff advances two grounds in support of his contention that his removal was procedurally defective. First, plaintiff argues that the letter of charges lacked the required specificity. Second, plaintiff maintains that the agency failed in its obligation and duty to file a disability retirement application on behalf of plaintiff before proceeding further with the removal action.

■ The role of this court in reviewing administrative actions in civilian pay cases is a limited one. *Staskus v. United States,* 1 Cl.Ct. 633, 636 (1983), *aff'd* 723 F.2d 68 (C.A.Fed.1983). The court's role is to determine, upon review of the administrative record, whether the agency action questioned violates applicable statutes or regulations, or is demonstrably in bad faith, lacking in substantial evidence, or arbitrary and capricious. *Wathen v. United States,* 208 Ct.Cl. 342, 351–52, 527 F.2d 1191, 1197 (1975), *cert. denied* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). This role is further tempered by the established proposition that a presumption exists that administrative actions are taken and processed in good faith. *Staskus v. United States, supra,* 1 Cl.Ct. at 636. *See also Wathen v. United States, supra,* 208 Ct.Cl. at 351, 527 F.2d at 1197. Given this standard of review, the decision by the FEAA that plaintiff's removal was procedurally proper, in accord with all applicable regulations, and supported by substantial evidence must be sustained.

### A. *Letter of Charges—Specificity*

At the time of plaintiff's removal in 1977, an individual in the competitive service whose removal was sought was entitled, *inter alia,* to reasons in writing and to notice of the action sought and of any charges preferred against him. 5 U.S.C. § 7501 (1976). Under regulations in effect at the time of plaintiff's removal, it was provided in pertinent part:

> [A]n employee against whom adverse action is sought is entitled to at least 30 full days' advance written notice stating any and all reasons, specifically and in detail, for the proposed action. [5 C.F.R. § 752.-202(a)(1).] [2]

The courts have faced the question of whether the reasons given in support of an adverse action were stated "specifically and in detail" on a number of occasions. In *Burkett v. United States,* 185 Ct.Cl. 631, 634, 402 F.2d 1002 (1968), the United States Court of Claims explained in pertinent part that this procedural requirement meant:

> to afford the employee a *fair opportunity* to oppose his removal, and the charges must be considered with the view of determining whether plaintiff was informed of the basis of the proposed action with *sufficient particularity* to apprise him of allegations he must refute or acts he must justify. The technical rules of criminal proceedings are not applicable here, and *the facts and circumstances of a particular case are regarded as important in such an inquiry* (emphasis added). [Citations omitted.]

The task here is to determine if the administrative determination that plaintiff was given a "fair opportunity" to oppose his removal because the notice of proposed removal informed him with "sufficient particularity" of the reasons for this adverse action is correct as a matter of fact and as a matter of law.

The second reason given in the January 31, 1977, proposed adverse action notice read: "You have repeatedly failed to follow supervisory instructions." [3] This reason

---

States, 186 Ct.Cl. 752, 758–61, 407 F.2d 866, 869–71 (1969).

2. The Federal Personal Manual (FPM), FPM Supplement 752–1, Section 54–3b(3) (Oct. 11, 1976), in effect at times material herein, provided in pertinent part:
"The Notice of Proposed Adverse Action must state specifically and in detail what the requirements of the position are and how the employee failed to measure up to the performance required or expected."

3. *As indicated earlier, the first reason was* withdrawn by the agency at the FEAA hearing.

was followed by one specification which listed, by specific dates, and discussed 11 occasions when plaintiff failed to turn in his Daily Activity Record although instructed to do so. These occasions covered the period April 6, 1976—December 20, 1976. The specification also set forth the dates when plaintiff failed to include the work papers on cases, which rendered the daily reports useless as a review tool. Plaintiff had been told by memoranda to submit work packages with the Daily Activity Record. The notice concluded by stating that plaintiff's actions with respect to the second reason appeared to be in violation of Internal Revenue Manual (IRM) 0735.1–1, Section 225.2 which stated in pertinent part, "[employees] are required to respond readily to the direction of their supervisors, to cooperate fully with all properly constituted authorities, * * *."

The third reason given in the January 31, 1977, proposed adverse action notice informed plaintiff that the quality of his work was unacceptable and inadequate in key areas critical to his tax auditor position. Plaintiff was also informed that this poor quality work had been called to his attention on a number of previous occasions by memoranda. This reason was followed by five specifications, each of which detailed specific poor quality work by specific case examples.

■ The FEAA decision held that the reasons given for the proposed adverse action and the underlying specifications were stated with sufficient specificity and detail to meet the requirements of 5 C.F.R. § 752.202(a). Moreover, after a thorough review and analysis of the reasons and underlying specifications for proposing the adverse action and the evidence, the FEAA found that the evidence fully supported reasons two and three and the underlying specifications. The court's review of the administrative record supports the conclusion that the FEAA determinations were correct in fact and in law.

Plaintiff attacks reason two by arguing that the notice does not point to any written document or policy in which the requirement to file the Daily Activity Record and work packages is spelled out. However, the charge was plaintiff's repeated failure to follow supervisory instructions. Whether there was a written directive on the matter of filing Daily Activity Records is not the point. The point is that plaintiff repeatedly failed to comply with oral and written instructions relative to filing Daily Activity Records and work packages. This was the charge, and the underlying specification detailed the numerous times that plaintiff failed to follow these instructions. Further, agency regulations (IRM 0735.1–1, section 225.2) stated that plaintiff was required to respond readily to the direction of his supervisors, a fact set forth in the notice of charges. It is noted that plaintiff did not challenge the truth of the specification before the FEAA, nor does he challenge it in his briefs before the court.

Plaintiff attacks reason three by arguing that the notice of charges did not set forth the standards needed for satisfactory performance and some measure of how far short the plaintiff fell from those standards. The short answer is that the agency set forth in the notice of charges a lengthy list of performance deficiencies by plaintiff over a 2½ year period. These charges by their very nature set forth the standards required of a Tax Auditor, such as plaintiff, e.g., accuracy of computations, correct knowledge and application of tax laws, proper evaluation of taxpayer data, etc. Plaintiff's arguments in this regard are most unpersuasive. As was the case with reason two, plaintiff did not challenge the truth of the specifications supporting reason three before the FEAA, nor does he challenge them in his briefs before the court.

Plaintiff's attack on the letter of charges rests essentially on esoteric arguments which are most unpersuasive. These arguments are subsumed by the critical facts, clearly established by the letter of charges, that "plaintiff was informed of the basis of the proposed action with sufficient particularity to apprise him of allegations he must refute or acts he must justify," and was

afforded "a fair opportunity to oppose his removal." *Burkett v. United States, supra,* 185 Ct.Cl. at 634, 402 F.2d at 1004. Since this test has been satisfied in this case, there is no merit to plaintiff's argument that there were deficiencies in the letter of charges which support a finding of procedural error. *See Fass v. Ruegg,* 379 F.2d 216, 218–19 (6th Cir.1967); *see also Long v. Department of the Air Force,* 683 F.2d 301, 302 (9th Cir.1982); *Preble v. United States,* 150 Ct.Cl. 39, 42–43 (1960).

■ Plaintiff argues that defendant's position in this case is flawed because it deals with the sufficiency of the notice issue as if it were a misconduct case and thus its arguments and authorities do not properly address the issue. Plaintiff stresses the fact that charges underscoring removal for misconduct would require different specificity and detail than charges underscoring removal for unsatisfactory work performance. The court finds no fault with this generalization. Indeed, as noted in *Burkett v. United States, supra,* the facts and circumstances of a particular case are regarded as important when a notice of charges is under scrutiny. However, and this is important, the test, as discussed above, for specificity and detail, is the same for both types of charges. *See Burkett v. United States, supra,* 185 Ct.Cl. at 634, 402 F.2d at 1004 wherein the Court of Claims cited, *inter alia,* in support of its assertion of the test discussed above, *Money v. Anderson,* 208 F.2d 34 (D.C.Cir.1953), a misconduct removal case.

### B. *Involuntary Disability Retirement*

Plaintiff's second contention is that the agency's failure to file an involuntary disability application with the Civil Service Commission on behalf of plaintiff before proceeding further with the removal action constitutes procedural error sufficient to invalidate the removal action taken.

■ Under 5 U.S.C. § 8337 (1976), an agency has authority to file an involuntary application for disability retirement on behalf of an employee. *See McGlasson v. United States,* 184 Ct.Cl. 542, 549, 397 F.2d 303, 307 (1968). Further, under applicable "Instructions,"[4] an agency has a duty to give retirement counseling to an employee who is unable to work satisfactorily because of ill health if he has 5 years of civilian service and appears to meet the medical requirements for disability retirement. These "Instructions" make it clear that an agency should not remove for disability reasons an employee whose mental condition impairs his judgment and ability without first applying for disability retirement on his behalf. *See* Federal Personnel Manual, FPM Supplement 831–1, S10–5b, Inst. 25, September 30, 1975; 39 Comp.Gen. 89 (1959). *See also Anderson v. Morgan,* 263 F.2d 903 (D.C.Cir.1959); *Piccone v. United States,* 186 Ct.Cl. 752, 407 F.2d 866 (1969). It is clear, as a matter of federal personnel policy and case law, that in those situations where an agency contemplates separating an employee for physical or mental reasons, it must first apply for disability retirement on behalf of said employee if the employee does not do so on his own behalf. In the instant case, plaintiff's proposed removal was for reasons of unsatisfactory performance of work, not for reasons of ill health or disability. Accordingly, plaintiff's argument that the IRS had a mandatory duty or obligation to file an involuntary disability retirement application on plaintiff's behalf, based on the separation for disability situation as discussed in the "Instructions" and case law, *supra,* is misplaced. This is not a "Separation—Disability" type case.

■ While an agency may not have a mandatory obligation to file an involuntary disability application in circumstances such as are present in this case, the statutory authority of 5 U.S.C. § 8337 conferring authority on an agency to do so carries with it

---

4. There is some question as to whether the Federal Personnel Manual and other agency Instructions can be considered mandatory regulations from which specific legal rights flow or are to be viewed as merely precatory or direc-

tory. *See Piccone v. United States, supra,* 186 Ct.Cl. at 770–74, 407 F.2d at 876–79 (1969) (Nichols, J. Concurring); *Nordstrom v. United States,* 169 Ct.Cl. 632, 638, 342 F.2d 55, 59 (1965).

an obligation to exercise its discretion in determining when to file an involuntary disability application on behalf of an employee. In this regard, if the discretion is exercised in a reasonable and prudent manner, given the existing circumstances, then it is not the function of the court to "second-guess" the agency's action. On the other hand, if there is an abuse of this discretion, then the court has a review function to implement. In determining whether an agency acted properly in filing, or in failing to file, an involuntary disability application on behalf of an employee, it is important to note that there is a presumption that agency officials have acted in good faith in this regard, and that such agency action, or inaction, can be overcome only by a strong showing to the contrary. *McFarland v. United States,* 207 Ct.Cl. 38, 47, 517 F.2d 938, 943 (1975), *cert. denied* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *see also McGlasson v. United States, supra,* 184 Ct.Cl. at 550, 397 F.2d at 307; *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954). Plaintiff has failed to make such a strong showing in this case sufficient to overcome this presumption.

 After receipt of the January 31, 1977, notice of proposed removal, plaintiff availed himself of the right to present an oral reply thereto. At this oral hearing on March 4, 1977, the question of disability retirement surfaced. The agency previously had asked plaintiff for access to his health records. In response to the January 31st notice of proposed removal, plaintiff's representative wrote to the IRS in pertinent part:

> Additionally we request that you give us access to Allen's [plaintiff] Medical Records IRS 36.005. We believe it contains information that will show that the real reason for this proposal is to punish Allen for perceived health problems. We ask that this be provided before any decision is made.

The record indicates that there was some discussion between an IRS Labor Relations Specialist (LRS) and plaintiff before the date of the oral hearing about retirement. The LRS testified at the hearing that plaintiff's prior supervisor had told him plaintiff was seeing a doctor on a regular basis and he also thought plaintiff was taking medicine. The LRS felt there might be a basis for disability retirement so he asked plaintiff about the matter. According to the LRS, plaintiff indicated he did take some medicine, but that he wasn't seeing a doctor but "was seeing a nurse of some sort and he saw her on a monthly basis * * *" because of a nervous condition he had, and had had for a long time. The LRS was aware that plaintiff had a nervous condition when he came to work for IRS in 1965, some 12 years previously, since his personnel file contained a copy of an entrance on duty Medical Certificate form, a matter to be discussed later. The LRS testified at the hearing that it was standard practice in his office that whenever they were confronted with a serious performance problem with an employee, an effort was made to find out if there was some other basis for the problem, *e.g.,* illness, drinking. Accordingly, the LRS was trying to find out if a health problem was the cause of plaintiff's performance problem. When the matter was discussed with plaintiff, plaintiff advised the LRS that he could provide IRS with a certificate from his doctor saying he was O.K. While the LRS did not always rely on the statement of the employee that poor health was not affecting his work performance, he testified that plaintiff's explanation of his health situation seemed plausible to him; *i.e.,* that his longstanding nervous condition was under control and that it did not affect his work performance. Plaintiff gave no indication to the LRS or other IRS officials that his nervous condition had any impact on his poor work performance. Plaintiff's conduct and demeanor at work did not indicate any mental or other medical problems. The LRS had no other reason or basis to doubt plaintiff's statement.

It is to be noted that plaintiff did not present any case at the hearing, although the opportunity to do so was available to him. His representative advised that be-

cause of the number of procedural errors in the case there was no need to present a case. The Hearing Examiner indicated he would like to have plaintiff testify as there were things he would like to ask him. However, the plaintiff's representative declined to call on him for testimony.

Plaintiff's official personnel file contained a certificate of Medical Examination (CSC Standard Form 78) dated April 24, 1965. The form ostensibly was required to be filled out as part of plaintiff's entrance on duty as an employee of IRS. In substance, the form indicated plaintiff had been hospitalized in 1962 at a Psychiatric Receiving Center in Kansas City, Missouri. In response to the question on Form 78, "Describe Any Residuals Of Previous Mental Or Nervous Illness," the answer was written in, "None—On Stelazine." The record does not show that plaintiff was on Stelazine in 1976 or 1977. Further, the record, scant as it is on the matter, indicates plaintiff had a "nervous condition" not a "psychotic disorder" as stated by plaintiff in his briefs.[5] Plaintiff, thereafter, worked for IRS from 1965 until he was removed in April 1977. The record in this case does not reveal that there was any other medical evidence, covering the period 1965–1977, in plaintiff's personnel folder. Since plaintiff, pursuant to a production request, presumably was given all medical documents relating to plaintiff in the IRS file, it is reasonable to conclude that this file did not contain any other relevant medical information except the Form 78 discussed above. Further, under such circumstances, it would not be unreasonable to conclude that plaintiff, during the period 1965–1977, had no medical problems that were serious enough to warrant entry into his personnel folder.

The FEAA in its decision addressed the question of whether the agency's removal action was improper because of plaintiff's poor health; whether this poor health had affected his performance; and whether the agency committed procedural error in not filing an involuntary disability retirement application on plaintiff's behalf. The FEAA decision stated in pertinent part:

The Examiner finds that, on the face of it, the agency did not have more than a mere hint (which was explicitly disabused by appellant) that his unsatisfactory performance was based on ill-health. The appellant's representative will not be heard to contend, in the face of the record, that ill-health was the reason for the deterioration in performance. The agency is not shown to have been unreasonable in relying on appellant's own assertions about his health. Moreover, appellant's representative does not even directly assert that ill-health was responsible for the performance deficiencies; he only asserts that the agency should have considered it.

The administrative record substantially supports these findings.[6]

Plaintiff argues that the reasons given for plaintiff's removal, *i.e.*, failure to follow supervisory instructions and unsatisfactory work performance manifest work patterns common to psychiatric disorders. However,

---

5. Stelazine is described in the Physician's Desk Reference (PDR) (34th ed. 1980) as effective for "the management of the manifestations of psychotic disorders," and possibly effective in "control of excessive anxiety, tension and agitation as seen in neurosis or associated with somatic conditions." The PDR also warned, *inter alia*, that "Stelazine may impair mental and/or physical abilities, especially during the first few days of therapy. Therefore, caution patients about activities requiring alertness (*e.g.*, operating vehicles or machinery)." However, the PDR also indicates, *inter alia*, that "one result of the therapy [from Stelazine use] may be an increase in mental and physical activity."

6. In the District Director's removal letter of April 28, 1977, he stated in pertinent part as follows:

"You have indicated your health is adequate to perform the duties of your position and there has been no evidence presented by you to indicate otherwise. Therefore, your representative's attempt to deny the propriety of this action on that account are baseless. Had management felt there was a medical basis for disability retirement, such a proposal would have been made."

The record in this case amply supports these statements.

there is absolutely no evidence establishing that fact in this case. Moreover, there is no evidence that plaintiff had a psychiatric disorder in 1976–1977. The record, at best, suggests he had a nervous condition which was under control. There is a complete absence of that type of behavior in this case that triggered agency application for disability retirement on behalf of employees in *Seebach v. United States,* 182 Ct.Cl. 342, 346 (1968) (overt mental illness manifestations), *Scroggins v. United States,* 184 Ct.Cl. 530, 532, 397 F.2d 295, 296 (1968) (altercations with fellow workers) and *McGlasson v. United States, supra,* 184 Ct.Cl. at 545, 558, 397 F.2d at 305, 312 (contemporary medical indication of schizophrenic reaction).

As noted in *Knotts v. United States, supra,* 128 Ct.Cl. at 492, 121 F.Supp. at 631, "Personnel disputes are hard to resolve * * *." In situations, such as this, where the agency must exercise its discretion in deciding whether poor performance is affected by health sufficient to warrant filing an involuntary disability application on an employee's behalf, the presumption that official actions were taken in good faith must prevail unless strong evidence is presented to the contrary. *See McFarland v. United States, supra; McGlasson v. United States, supra; Knotts v. United States, supra.* Plaintiff presented no strong evidence which suggests in any way that the agency's decision to remove plaintiff rather than file an involuntary disability retirement application was unreasonable, arbitrary, capricious or an abuse of discretion.

Plaintiff argues, instead, that such evidence as was available at the time of removal in April 1977, *i.e.,* a 1965 Medical Certificate evidencing a 1962 hospitalization for a nervous condition, and use by plaintiff in 1965 of a medication that might affect one's mental abilities for a limited time, was sufficient to mandate the duty of the agency to file such an application in 1977. As indicated previously, the agency had no such mandatory duty in this case. Since this was not a Separation—Disability case, plaintiff had some obligation to establish that there was a nexus between his poor work performance and his alleged nervous condition which would assist the agency in its effort to do the right thing. The agency, on this record, tried to do the right thing. If there is a fault in this case, it rests with plaintiff, not the agency. As indicated earlier, plaintiff's representative refused to permit plaintiff to testify at the hearing.

Plaintiff finds error in the FEAA decision wherein the Examiner relies, *inter alia,* on the plaintiff's assertions, which were never disavowed, that his nervous condition did not affect his work performance. However, plaintiff does not cite any authority for the proposition that an agency cannot rely on an employee's statement of whether physical ailments interfere with his work performance. In this case the LRS testified he did not always rely on the employee's statement that his work performance was not affected by physical problems. He obviously judged each situation on its own facts. Here, there were no other manifestations which ran counter to plaintiff's assertions. Surely, it was not unreasonable to accept such assertions under those circumstances.

It is true, as plaintiff stresses, that employees at times do resist efforts by agencies to file disability retirement applications on their own behalf. *Seebach v. United States, supra,* (paranoid state); *Scroggins v. United States, supra,* (paranoid reaction); *McGlasson v. United States, supra,* (schizophrenic reaction, paranoid type). However, the agencies in those cases had demonstrable manifestations of employee behavior which supported the filing by the agency of involuntary disability applications. Here, there were no such physically violent or abusive conduct manifestations. Further, one does not know whether or not plaintiff would have opposed the agency's effort to file such an application. Again, plaintiff would not testify at the hearing. Finally, while plaintiff's representative was arguing before the District Director and the FEAA that the agency should have filed a disability application on plaintiff's behalf, it should be noted that plaintiff, for a 1-year period following his removal could have filed for

disability retirement on his own behalf.[7] *See Marcee v. United States,* 197 Ct.Cl. 363, 366, 455 F.2d 525, 526 (1972). His failure to do so suggests that he was not totally disabled for disability retirement purposes. Assuming this to be true, it would be the height of folly to fault the agency for refusing to engage in a useless act. Moreover, even if one assumes that the agency had an obligation to file a disability application on plaintiff's behalf, it would have been harmless error since, most probably, the application would have been denied. *See Collins v. United States,* 220 Ct.Cl. 661, 663–64 (1979); *see also Shaw v. United States Postal Service,* 697 F.2d 1078, 1080 (Fed.Cir.1983); *McGlasson v. United States, supra,* 184 Ct.Cl. at 552, 397 F.2d at 309. Merely because the agency files the application for disability retirement instead of the plaintiff does not advance its chances of acceptance by the Civil Service Commission. *See Bennett v. Dulles,* 117 F.Supp. 454, 456 (D.C.1954) (disability application filed by agency on behalf of an employee rejected by Civil Service Commission because the evidence was insufficient to establish total disability under the Retirement Act). *See also Seebach v. United States, supra,* 182 Ct.Cl. at 347. The views of the agency officials, expressed at the hearing before the FEAA, that plaintiff was not totally disabled, were not unreasonable, and have not been shown to be unreasonable or unjustified.

It has been held that an agency must have reason to believe that the employee is "totally disabled for useful and efficient service" before it files an involuntary disability retirement application on behalf of an employee. *Peele v. United States,* 3 Cl.Ct. 419, 422 (1983) quoting 5 C.F.R. § 831.1203(c)(1) (1978). The focus of attention in this regard must rest on what the agency knew at the time of the decision in issue and the reasonableness of its action in light of that knowledge. *See Peele v. United States, supra,* 3 Cl.Ct. at 422 (1983). Here, the agency had no knowledge or notice of any illness of plaintiff at the time of decision and had no reason to believe that plaintiff's performance shortcomings were related to or caused by any such illness. The agency was aware that plaintiff had a nervous condition for which he was hospitalized some 12 or more years earlier, but since that time their was no evidence that plaintiff had a serious physical problem which affected his work performance. The agency did look into the matter but no evidence was found to suggest (1) that plaintiff in 1976–1977 had a serious nervous condition, and (2) that this nervous condition was the reason behind plaintiff's performance shortcomings. As a result, no procedural error can flow from the agency's not filing an application for disability retirement on plaintiff's behalf. *See Peele v. United States, supra.*

### III.

Based on the foregoing discussion, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, with plaintiff's complaint, as amended, to be dismissed.

---

7. Plaintiff argues it would be unfair to require him to urge his own disability retirement because it would force him to take inconsistent positions relative to the retirement application and the removal action. Plaintiff misreads *Seebach v. United States, supra,* and *Piccone v. United States,* 186 Ct.Cl. 752, 407 F.2d 866 (1969) in relying on them in support of this argument. The essence of those two cases is that in Separation for Disability situations, the agency cannot go forward on the removal action until the pending disability retirement application has been finally determined by the Civil Service Commission. *See Piccone v. United States, supra,* 186 Ct.Cl. at 764, 765, 407 F.2d at 872–73. Here, there is no such danger, for plaintiff was still able to file for disability retirement after the removal action was over if he really believed he was so disabled as to be entitled to disability retirement. He no longer was on the horns of the dilemma that bothered the court in *Seebach* and *Piccone.*