**Byrl HEARNE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 217–82C.

United States Claims Court.

Jan. 31, 1985.

Cynthia Podren, Oakland, Cal., for plaintiff. Greg Schaaf, Washington, D.C., of counsel.

Robert Reutershan, Washington, D.C. with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant. Karen Wastrell, Veterans Admin., of counsel.

## OPINION

TIDWELL, Judge:

At issue in this appeal is a decision by the Merit Systems Protection Board (MSPB or the Board) which denied plaintiff's claims for reinstatement and back pay. The Board found that plaintiff voluntarily resigned from his employment and was not subjected to an adverse removal action under law or regulation. Since no adverse action was found to have occurred, the Board dismissed plaintiff's appeal as being foreclosed by virtue of his resignation. The appeal to this court challenges the correctness of the Board's dismissal. The case is before this court on cross-motions for summary judgment.[1] This court holds that the finding by the Merit Systems Protection Board, that plaintiff's decision to resign was voluntary, was supported by substantial evidence and was neither arbitrary nor capricious. The court finds there are no genuine issues as to any material fact. Therefore, Defendant's Motion for Summary Judgment is granted and plaintiff's motion is denied. Jurisdiction of this suit is properly in the United States Claims Court (under 28 U.S.C. § 1491, as amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133, 96 Stat. 25, 39–40).[2]

## FACTS

This case involves a single incident which spawned concurrent criminal and administrative employee removal proceedings. To a great extent, the legal disagreement presented by the present cross-motions revolves around the timing of the two proceedings, their relation to one another and their relation to plaintiff's eventual resignation.

Plaintiff, Byrl Hearne, was employed in the food service department of the Veterans Administration Hospital (V.A. or hospital), San Francisco Medical Center since 1947. During the ensuing 31 years, he was promoted from kitchen helper to food service foreman. During those years of service, Mr. Hearne was commended five times, and had never been disciplined or reprimanded. On September 6, 1978, Mr. Hearne was arrested in the parking lot of the V.A. by V.A. police for the theft of food and other items from the food department, all of which had a total approximate value of $52.00. The charge filed against plaintiff was violation of 18 U.S.C. § 641 (theft of government property), and a hearing date was set in the United States District Court for the Northern District of California to begin on September 21, 1978.

---

1. Appeals from final orders or decisions of the Merit System Protection Board involving events occurring before January 11, 1979 (the case here) are governed by prior law rather than the Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 902(b) 92 Stat. 1111, 1224; *Peele v. United States*, 3 Cl.Ct. 419, 421 (1983); *Gaskins v. U.S. Postal Service*, 221 Ct.Cl. 918, 919–20 (1979).

2. Although defendant does not raise the issue, the court notes that there is an extensive number of civilian pay cases that hold that plaintiff's voluntary retirement precludes the court from asserting jurisdiction to grant plaintiff restoration to former position and to award back pay. *See SAMMT v. United States*, 7 Cl.Ct. 274, 278–79 (1985). *Brown v. United States*, 2 Cl.Ct. 586 (1983), *aff'd* 732 F.2d 167 (Fed.Cir.1984); *Parker v. United States*, 230 Ct.Cl. 974 (1982); *Kestner v. Department of the Interior*, 229 Ct.Cl. 772 (1982); *Clark v. United States*, 229 Ct.Cl. 570, 573 (1981); *Taylor v. United States*, 219 Ct.Cl. 86, 591 F.2d 688 (1979).

"In these civilian pay cases, the Court of Claims and this court have held that jurisdiction is lacking to grant back pay and reinstatement to one who voluntarily terminated his federal employment by resignation or retirement. However, if the resignation or retirement is deemed involuntary, these cases concede that this court does have jurisdiction under the circumstances." *SAMMT v. United States, supra* at 279.

In the present case, plaintiff alleges that his resignation was involuntary and the Board determination to the contrary was improper. However, the court sustains the MSPB finding as proper and well-substantiated. In the alternative, the court could arguably dismiss the case because of a lack of jurisdiction.

Thereafter, at defendant's request, the hearing was postponed until October 5, 1978.

In the meantime, on September 12, 1978 the V.A. sent a notice of intent to remove Mr. Hearne from his job, and a notice to suspend him pending the outcome of the proposed removal. Mr. Hearne was offered an opportunity to reply or respond, albeit a very short time. On September 15, the V.A. informed Mr. Hearne that his suspension would commence immediately, without pay, for a period of thirty days pending a decision on the proposed removal. The reason given by the V.A. for the immediate suspension and proposed removal was the protection of government property from further possibility of theft by Mr. Hearne. No reason was given why his request to use sick or annual leave was ignored by the V.A. Subsequently, plaintiffs' attorney requested an extension of time to respond to the proposed removal, which the V.A. granted. Plaintiff was given until October 2, 1978 to reply.

Mr. Hearne appeared, with counsel, before the U.S. Magistrate on September 21, and trial was set for October 5, 1978. On September 29, two legal interns from the U.S. Attorney's office and representatives from the V.A. met to discuss the Hearne matter. Mr. R.A. Wilson, Chief of Personnel Services at the V.A., later testified that one of the legal interns asked him at the September 29, 1978 meeting what the outcome would be should the plaintiff resign. Mr. Wilson stated that it was V.A. policy that Mr. Hearne could resign, but that the letter of resignation would have to reflect the fact that it was tendered to avoid pending criminal charges.

The importance of this inquiry was tied directly to a plea bargain being explored by the legal interns with Mr. Hearne and his attorney under which the criminal charges against Mr. Hearne would be dismissed if he would resign from his position at the V.A. While it never became apparent which party originated this rather routine settlement arrangement, the MSPB found that there was no substantial evidence to indicate that the V.A. initiated the proposal.[3] This finding, in turn, figured significantly in the Board's decision that plaintiff's resignation was voluntary, in that he did not accept terms proposed by the V.A. against his own wishes. This fact will also be important to the court's analysis of whether plaintiff's resignation was valid under applicable law.

In any event, plaintiff did learn of the proposed arrangement at least by October 2, 1978 at a meeting with his attorney. Three days later, at the federal courthouse, shortly before his trial was to begin, Mr. Hearne resigned, in writing, from the V.A. as a result of a plea bargain agreement that was reached by his attorney and the legal interns. Mr. Hearne dated his resignation October 5, 1978 and sent it to the V.A. The legal interns had already requested dismissal of the theft charge. The dismissal was granted by the court on October 5, 1978.

Mr. Hearne thereafter attempted to recant his resignation and appealed in November of 1978 to the Federal Employee Appeals Authority, which shortly thereafter became the Merit Systems Protection Board. Mr. Hearne sought reinstatement and back pay, arguing, *inter alia,* that the V.A. removal proceeding should have been stayed pending disposition of the criminal matter, that he lacked sufficient time to respond to the adverse action, that actions taken by the employer were discriminatory on the basis of race and age, and that he

---

3. Both parties contend that the arrangement was proposed by the other. At the hearing before the Board during the MSPB inquiry, Mr. Hearne alleged that the idea originated with the V.A., stating that he was so informed by his attorney as such.

The Chief of Personnel Services, Mr. Wilson, stated that he never communicated with the U.S. Attorney's office or the plaintiff's attorney prior to the meeting of September 29 and, therefore, could not have made this settlement proposal. In addition, the MSPB examined an affidavit from Anthony Petru, one of the legal interns who told plaintiff's attorney that it would be "impossible" to dismiss the case "because the evidence against Mr. Hearne was so good."

was coerced to resign by the agency.[4] On May 24, 1979 the MSPB ruled that plaintiff's resignation was proper in all respects and that alleged deficiencies in the proposed removal were not in issue because the proposed removal action was not put into effect. Several months later, plaintiff petitioned the Office of Appeals of MSPB to reopen and reconsider the preceding decision by the regional office. The Office of Appeals agreed with the evaluation made by the Regional Office that the resignation was voluntary and the appeal was not from an adverse action under law. It further noted that all administrative appeal rights had been exhausted. Subsequently, plaintiff appealed the MSPB's final decision to this court on April 30, 1982.

In his petition, plaintiff charges in the first cause of action that his right to due process was violated by the V.A.'s insistence on proceeding with the removal procedures while criminal charges were pending. Plaintiff also alleges that the V.A. failed to provide ample opportunity to secure affidavits and prepare his response to the "adverse action," 5 C.F.R. 752.202(b) (1978).

In his second cause of action, plaintiff contends that his resignation was coerced by the agency, that it was obtained by deception, it was involuntary in that he was not able to choose the effective date of his resignation and that he was not given sufficient time to consider the plea bargain that had led to his resignation in return for dismissal of criminal charges.

## DISCUSSION

■ Plaintiff has contended that the MSPB's refusal to consider the removal action[5] on the merits was in error. The allegation raises the question of the possible scope of review by this court of such

administrative decisions in a civilian pay dispute, such as this, it is settled law that judicial review of the government's actions are generally limited. *Sokoloff v. United States*, 4 Cl.Ct. 140, 143 (1983); *Wathen v. United States*, 208 Ct.Cl. 342, 351–52, 527 F.2d 1191, 1197 (1975), *cert. denied* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82, (1976). Specifically, a reviewing court determines whether there has been substantial compliance with procedural requirements and whether the action was arbitrary, capricious, or not supported by substantial evidence. *Boyle v. United States*, 207 Ct.Cl. 27, 34–35, 515 F.2d 1397, 1401 (1975); *Schlegel v. United States*, 189 Ct.Cl. 30, 35–36, 416 F.2d 1372, 1375 (1969); *cert. denied* 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970), and cases cited therein. The presumption is that the administrative officers of the agency have acted in good faith. *Wathen*, 208 Ct.Cl. at 354, 527 F.2d at 1198. Moreover, a plaintiff has the burden to show with specificity the deficiencies requiring reversal of the agency's action. *Gross v. United States*, 205 Ct.Cl. 605, 613, 505 F.2d 1271, 1275–76 (1974).

■ The essential point to note may be found in the practical interpretation that has been placed upon the arbitrary and capricious standard over the years by the Court of Claims. Simply stated, it is not our function to merely substitute the decision we might have made, had we been the fact-finding body, for that of the administrative agency. *Haynes v. United States*, 190 Ct.Cl. 9, 418 F.2d 1380 (1969) clearly states that:

It would be inappropriate for this court to substitute its judgment for that of the administrative tribunals in the absence of clear and substantial evidence that this finding was arbitrary and unreasonable.

---

**4.** Plaintiff states in his petition to this court that the alleged discrimination and the failure to follow proper suspension procedures are not at issue in this appeal.

**5.** Throughout this action the parties make repeated reference to "the removal action" and "the resignation." It is important to keep them

separate. "The removal action" is the adverse action administratively brought by the V.A. against Mr. Hearne to terminate him from his government job. The resignation was an action taken by Mr. Hearne to voluntarily resign his job. The importance of the differences between the two will become apparent.

*Id.* at 16, 418 F.2d at 1385, citing *Powers v. United States,* 169 Ct.Cl. 626, 631 (1965). The court must, therefore, limit itself to an examination of plaintiff's appeal which conforms to the standards set forth above, and avoid what would amount to a relitigation of the case. The primary question before the court, in the present case, given this standard of review, is whether the MSPB determination that plaintiff's resignation was voluntary, was procedurally proper and supported by substantial evidence. *See Sokoloff v. United States,* 4 Cl.Ct. at 140. Most recently, the Court of Appeals clearly restated the standard to be used for a review of a Merit System Protection Board decision. The court found that the Board's decision must be affirmed unless it is found to be:

1. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

2. obtained without procedures required by law, rule, or regulation having been followed; or

3. unsupported by substantial evidence. *Covington v. Department of Health and Human Services,* 750 F.2d 937 at 941 (Fed. Cir., 1984); citing 5 U.S.C. § 7703(c) (1982); *Hayes v. Department of Navy,* 727 F.2d 1535 (Fed.Cir.1984); *Phillips v. United States Postal Service,* 695 F.2d 1389 (Fed. Cir.1982).

▪ In order to sustain such a finding, the court must examine the substantive law and the facts surrounding the voluntariness of the resignation. Resolving the question of whether an act, such as resignation, was given voluntarily or not, calls for adherence to guidelines previously set out by this court and the United States Court of Claims.[6] The principle for determining whether a resignation was voluntarily tendered was stated in *Fruhauf Southwest Garment Co. v. United States,* 126 Ct.Cl. 51, 111 F.Supp. 945 (1953), where the test for determining duress from government action was divided into three parts:

* * * (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative and (3) that said circumstances were the result of coercive acts of the opposite party.

*Id.* at 62, 111 F.Supp. at 951. See also *Giles v. Office of Personnel Management,* 229 Ct.Cl. 615 (1981); *McGucken v. United States,* 187 Ct.Cl. 284, 407 F.2d 1349, *cert. denied* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969).

▪ Plaintiff asks the court to discard these formulae and view the situation from a different, perhaps larger, perspective, *i.e.,* the effect of the circumstances as it occurred to plaintiff. However, such a standard would be vague and uncertain, and is the type of situation which our precedent was developed to avoid. The court will examine the surrounding circumstances to evaluate the employee's ability to exercise free choice, but it will apply an objective test in such situations, and it will not examine the subjective perceptions of the employee. *Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574–1575 (Fed.Cir., 1983). The court's inquiry into the MSPB's treatment of plaintiff's appeal will follow the three-part test, and the relevant presumptions and procedural limitations described above will be applied at each step.

▪ The first element of the test that needs to be met to show coercion is to determine whether one side involuntarily accepted the terms of another. In other words, did defendant initiate and essentially control the submission of resignation? If not, the answer must be that the resignation occurred through either the conduct of plaintiff or a party other than defendant; the finding of voluntariness will be affected accordingly. Each element of duress is measured by an objective test of the facts, and not by the employee's subjective evaluation of a situation. *Christie v. U.S.,* 207 Ct.Cl. 333 at 337–338, 518 F.2d 584 at 587 (1975).

---

6. The United States Claims Court is bound by the precedents of its predecessor, the United States Court of Claims. United States Claims Court General Order 1, adopted October 7, 1982.

Plaintiff has alleged in both his petition and motion for summary judgment that the resignation came as a result of a "deal" arranged by the V.A. The facts do not substantiate this assertion that defendant orchestrated the "deal." The "deal" was a plea bargain whereby the United States Attorney would move to have the *criminal* charges against Mr. Hearne dismissed in return for plaintiff's submittal of his resignation to the V.A. Neither party disputes that such an arrangement took place.

The MSPB examined evidence on the point which consisted of letters, sworn affidavits and oral testimony. Plaintiff, for example, testified that his attorney had spoken to a legal intern in the U.S. Attorney's office on several occasions, and that his attorney said that the legal intern told him that the idea of the arrangement was first proposed by the V.A. Additionally, plaintiff contended that the meeting of September 29, 1978 at which representatives of the V.A. and the U.S. Attorney met to discuss Mr. Hearne's case, was proof that the V.A. orchestrated the "deal." The V.A., on the other hand, proffered an affidavit from legal intern Anthony Petru which stated that the first time the "deal" was proposed was when plaintiff's attorney proposed it to him prior to the meeting of September 29th. The "deal" was the plea bargain involving the criminal charges, not the suspension or removal. Mr. Petru stated that plaintiff's attorney was concerned that the disciplinary proceedings against his client could be "very damaging, especially if he were to have a criminal convic-

tion." Because of the apparent reliability of the testimony, the court will consider this hearsay evidence.[7]

As for the meeting itself, Mr. Hearne presented no evidence, beyond speculation, as to why the meeting was called, who arranged it and what transpired there. On the other hand, Mr. Wilson testified that he was asked by one of the legal interns what the effect of resignation would have upon Mr. Hearne, as indicated, *supra*. Mr. Wilson stated that Mr. Hearne could resign at any time but that his Official Personnel File would reflect it was submitted with criminal charges pending. Based upon overall evidence, both documentary and testimonial, the MSPB found that "The record suggests that [the resignation] was raised by [Mr. Hearne's] attorney, however, it is not established. In any case, the V.A. did not suggest or broach the subject." The court finds that consideration of the direct evidence alone indicates that the plaintiff is unable, beyond speculation, to prove the V.A. initiated the "deal" or its terms.

■ Plaintiff admits that there was no direct communication between the parties about the terms of the settlement of the criminal action but claims that there was behind-the-scenes manipulation of the same by the V.A. Both the MSPB and this court have searched for real evidence of this manipulation, but have found none. The strength and nature of indirect manipulation necessary to prove real duress placed

---

7. Hearsay, as just stated, presents an evidentiary problem, but one which is treated differently in administrative proceedings. Hearsay evidence is admissible in an administrative proceeding if it is "sufficiently convincing to a reasonable mind and reveals sufficient assurance of its truthfulness." *Pitts v. United States*, 1 Cl.Ct. 148, 151 (1983); *Pascal v. United States*, 211 Ct.Cl. 183, 191, 543 F.2d 1284, 1289 (1976). Moreover, hearsay can constitute substantial evidence if a reasonable mind might accept it as adequate to support a conclusion. *E.g., Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Cooper v. United States*, 226 Ct.Cl. 75, 80–81, 639 F.2d 727, 730–31 (1980); *Wathen*, 208 Ct.Cl. at 355–56, 527 F.2d at 1199. Here, we note initially that the hearsay offered

by Mr. Petru is less attenuated in its chain than that offered by plaintiff. Additionally, some indicia of the reliability of the defendant's hearsay was provided by portions of the oral testimony. For example, Mr. Wilson, the Chief of Personnel Services at the V.A. testified that he never had contact with the U.S. Attorney's office outside of the meeting of September 29, and never had contact, other than official correspondence, with the plaintiff during that time. Moreover, plaintiff presented testimony that he never had contact with the V.A. after September 6, 1978 but that his attorney *did* speak with representatives of the U.S. Attorney's office at least twice prior to the meeting of September 29.

upon an employee is a question that this court need not address in light of the evidence, or lack of it, in the record. The fact that the V.A. proceeded to remove plaintiff the day after he resigned indicates the independent nature of the V.A. course of action, and inherently refutes the idea of a close coercive relationship between the V.A. and the U.S. Attorney.[8] Therefore, this court holds that the finding by the MSPB in this area was not arbitrary or capricious, and was supported by substantial evidence.

 The second element of the test to be established is that the circumstances of the case permitted no other alternative. Here plaintiff had a choice between having criminal charges against him dismissed by resigning from civilian employment or fighting both the criminal charges and the V.A.'s removal action. Admittedly, a classic example of Hobson's choice. The choice is not an easy one to make. But not every unpleasant working arrangement or distasteful set of alternatives constitutes duress or renders an otherwise voluntary act involuntary. *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587–88. In that case, the plaintiff was accused of striking her superior, and was subsequently faced with either submitting to a removal for cause, or voluntary resignation. The plaintiff chose to resign. The court found this choice to be voluntary, and stated that "The fact remains, the plaintiff *had a choice.* She could stand pat and fight. She chose not to." *Id.* at 338, 518 F.2d at 587. (Emphasis supplied.)

In the present case, one of the reasons plaintiff submitted his resignation was to avoid termination for cause (removal). This court has repeatedly upheld the validity of voluntary resignations where they were submitted to avoid threatened termination for cause. *Christie,* 207 Ct.Cl. at 338–39, 518 F.2d at 587; *Pitt v. United States,* 190 Ct.Cl. 506, 513, 420 F.2d 1028, 1032 (1970) (termination resulting from threatened criminal prosecution); *Cosby v.*

United States, 189 Ct.Cl. 528, 417 F.2d 1345 (1969) (termination for gross insubordination); *Johnson v. United States,* 111 Ct.Cl. 750, 79 F.Supp. 208 (1948) (judge resigned to avoid impeachment). Moreover, this case can be likened to *Pitt* because Pitt's resignation was also tendered to avoid criminal prosecution. The dismissal of criminal charges resulted in a very real benefit to plaintiff which the MSPB and this court cannot ignore.

Such positive benefits which may flow from an employee's decision may shape the decision taken, but do not expressly or implicitly constitute a form of duress contemplated under the tripartite test. As already stated, plaintiff could stand pat and fight, a less attractive course to be sure, but a course of action nevertheless. Therefore, the court holds that the circumstances of this case did permit an alternative, however unpalatable the choice may have been from plaintiff's point of view.

 It is axiomatic that the threatened termination must be for good cause in order to precipitate a binding, voluntary resignation, which leads us to the third element of the test: whether the circumstances presented to the employee were the result of coercive acts of the employer. In *Christie,* plaintiff questioned the employer's motives for bringing the removal action, as does plaintiff in this case. The court found for defendant, by holding that the " 'good cause' requirement is met as long as the plaintiff fails to show that the agency knew or believed that the proposed termination could not be substantiated." *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587–88; citing *Leone v. United States,* 204 Ct.Cl. 334, 340 (1974). In the present case, plaintiff presented no evidence that defendant knew or believed that the proposed termination could not be substantiated. Moreover, plaintiff never denied having committed the theft.

 Plaintiff's next contention of coercion, under the third part of the test, is that the dismissal of the criminal charges brought against him.

---

8. The court has no doubt whatsoever that Mr. Hearne was "permitted" to resign in return for

the interplay of the civil and criminal proceedings violated his constitutional rights to due process. Specifically, the plaintiff contends that the removal action should have been postponed until the outcome of the criminal proceeding. Regrettably, for Mr. Hearne, however, the Constitution of the United States does not require a stay of civil or administrative proceeding pending the outcome of criminal proceedings. *United States v. Kordel*, 397 U.S. 1, 11–13, 90 S.Ct. 763, 769–70, 25 L.Ed.2d 1 (1970); *Standard Sanitary Manufacturing Co. v. United States*, 226 U.S. 20, 51–52, 33 S.Ct. 9, 15–16, 57 L.Ed. 107 (1912). *See also Securities and Exchange Commission v. Dresser Industries*, 202 U.S.App.D.C. 345, 351–353, 628 F.2d 1368, 1374–1376, *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). In *Kordel*, the Supreme Court allowed simultaneous civil and criminal proceedings, stating, "It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *Kordel*, at 11, 90 S.Ct. at 769. The court went on to note that the government had not brought the civil action "solely to obtain evidence for its criminal prosecution," or without notice to the defendants that it contemplated a criminal action. Moreover, defendant was not unrepresented by counsel, nor were there any other "special circumstances" suggesting that the parallel proceedings were unconstitutional or improper. *Id.* at 11–12, 90 S.Ct. at 769–70. Otherwise, the investigation of both the civil and criminal actions were viewed by the court as beneficial in protecting public interest.

It must be remembered that both actions grew out of a single incident, with the criminal charges being filed very shortly after the incident by the V.A. and prior to the initiation of administrative removal charges by the V.A. Chief of Personnel Services. Taken together with the fact that plaintiff did not present evidence proving otherwise, the court finds that the par-

allel proceedings were not used "solely to obtain evidence for the criminal prosecution." The concern of *Kordel* and related cases in this regard is that the broad and powerful discovery tools available in civil actions might be misused to gain evidence, and in administrative proceedings an employee might be fired simply for answering questions in an investigation. *See Kalkines v. United States*, 200 Ct.Cl. 570, 574, 473 F.2d 1391, 1393 (1973) (Customs employee fired for refusing to answer questions put to him during the course of an investigation). But this case was not a civil suit, and unlike the situation in *Kalkines*, plaintiff in this case could not be fired simply for refusing to answer. Nothing in the relevant statutes and regulations would allow the V.A. to do so. On the contrary, the V.A. had the burden of proving the charges against the employee in a proposed dismissal, which could not be satisfied by pointing only to an employee's silence. *Spears v. United States*, 230 Ct.Cl. 1005, 1007 (1982). In addition, this was not a case where the government used an administrative investigation as a sham or prelude to filing charges, or to develop charges already filed. Instead, the opportunity to reply was created largely for the benefit of plaintiff and was not merely a tool for gathering additional evidence against him.

Other factors point to the validity of the parallel proceedings for this case. For example, plaintiff had notice of the criminal action from the outset since he was arrested and charged with theft at the time of the incident. At all times subsequent to the arrest, the plaintiff was represented by an attorney. Moreover, the V.A. stated that part of its purpose in considering Mr. Hearne's removal was the protection of government property from exposure to further possibility of theft. The implication of the MSPB's finding that the V.A.'s action was beneficial in protecting the public interest was neither arbitrary nor capricious.

Plaintiff further contends that special circumstances in this case led to a violation of due process. Simply stated, plaintiff

says that the very existence of both actions overwhelmed his ability to defend himself, created a "whipsaw effect," and, making him believe that he had no chance otherwise, he tendered his resignation on the day his trial was set to begin. But plaintiff's belief, once again, is not enough to make a situation coercive, since duress is not measured by the employee's subjective evaluation of a situation, but by the circumstances as they are measured by objective standards. *Christie,* 207 Ct.Cl. at 337–338, 518 F.2d at 587. The court has already noted in this case that plaintiff had the option to stand pat and fight. The mechanism for doing so was at his disposal. There were also procedures in existence by which plaintiff could have requested action by the V.A. to avoid infringement of his defense to both actions. See Federal Personnel Manual, Supplement 752–1, Subchapter S6–3. Under these procedures, the V.A. would be bound to consider such requests.

When Mr. Hearne submitted an answer to the V.A. on October 2, 1978 the letter contained no due process reservations but proceeded to a defense of the charge on the merits. Based on the nature of the information presented to it, the V.A. then considered Mr. Hearne's removal. By this time, Mr. Hearne was already considering his resignation which he then submitted on October 5, 1978, but, as indicated, *supra,* the *quid pro quo* for the October 5, 1978 resignation was dismissal of the criminal charges and not dismissal of the removal action.

In the examination of the special circumstances of this case, which involves weighing the interests of defendant as well as plaintiff, and the actions of both, the court holds that plaintiff's resignation was not the result of a denial of his right to due process. The V.A. is not under a mandatory duty to defer a civil proceeding in the face of a contemplated or actual criminal proceeding arising out of the same set of circumstances and involving the same parties, to preserve due process. The rationale to that effect in *United States v. Kordel* is controlling. In this case, the concurrence of the two actions did not objectively impair the plaintiff's ability to defend himself to the extent that the "... interests of justice would require" the deferral of the civil proceeding, *Kordel,* 397 U.S. at 12, footnote 27, 90 S.Ct. at 770 n. 12, especially where the parties are in active consideration of agreeing to a plan which, with the knowledge of all parties, would intentionally bring the criminal and administrative action together to be settled.

Finally, as evidence of duress, plaintiff alleges both time pressure and deceit by the V.A. to show that the resignation was tainted. As for the amount of time in which plaintiff had to consider resigning, the record shows that he knew of the terms of defendant's offer to settle at least three days before he resigned on October 5. *McGucken v. United States,* 187 Ct.Cl. 284, 407 F.2d 1349, *cert. denied* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969), held that three days was sufficient time to consider a decision to resign. *See* 5 C.F.R. § 752.-202(c) (1978) as set out on page 14, *infra,* of this opinion. As for the claim of deception, plaintiff contends that the V.A. represented to him that his resignation would result in a "clean" personnel file, but that it actually showed the resignation was made with removal charges pending. The MSPB knew of these factors including all the factors surrounding Mr. Hearne's resignation and the criminal proceedings. The Board dealt properly with the facts including Mr. Hearne's dealings with the V.A. on the resignation/removal process and the U.S. Attorney on the criminal/resignation agreement. Accordingly, the court holds that plaintiff was not placed under undue or improper time pressure and was not a "victim of deception" by the V.A.

As we have stated, the issue of the nature of plaintiff's resignation covers all of the aspects of this appeal and the conclusions are drawn not on plaintiff's subjective view but upon the facts of the case as they occurred. For these reasons, the court holds that plaintiff's resignation was voluntary.

This concludes our discussion of the three-point test discussed, *supra.*

Counsel for plaintiff has also alleged certain procedural errors which, she argues, stand independently of the issue of voluntariness previously discussed. Specifically, error is predicated on the V.A.'s failure to provide more opportunity to secure affidavits and other information pertinent to his defense pursuant to former 5 C.F.R. § 752.202(b) (1978) and that Mr. Hearne's resignation was a nullity because he was precluded from selecting the effective date of his resignation.

Former 5 C.F.R. § 752.202(b) (1978) provides in part that:

(b) *Employees answer.* Except as provided in paragraph (c) of this section, an employee is entitled to a reasonable time for answering a notice of proposed adverse action and for furnishing affidavits in support of his answer. The time to be allowed depends on the facts and circumstances of the case, and shall be sufficient to afford the employee ample opportunity to review the material relied on by the agency to support the reasons in the notice and to prepare an answer and secure affidavits....

Furthermore, under 5 C.F.R. 752.202(c) "Exceptions to notice period and opportunity to prepare answers" it is stated that:

(2) When there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed, the agency is not required to give the employee the full 30 day's advance written notice, but shall give him such less number of days advance notice and opportunity to answer as under the circumstances is reasonable and justified.

Since plaintiff was accused of violating 18 U.S.C. 641 (theft of government property), which carries with it a possible sentence of imprisonment, the V.A. was authorized to remove the employee before 30 days, which would naturally reduce his time to answer be cut to less than seven days, according to 5 U.S.C. § 7513.

In this case, the V.A. originally gave plaintiff 13 days, from September 12 to September 25, 1978, to answer the removal charges. In addition, plaintiff's attorney requested and received from the V.A. an extension of seven days dating to October 2, 1978. A total of three weeks was available to plaintiff to answer the charges. In light of the statutory and regulatory language involved here, the court finds that the V.A. did not act in an arbitrary or capricious manner in hastening the date for plaintiff's termination or violate the proper procedure governing time to answer. Plaintiff could have unilaterally postponed his date of resignation beyond October 5, 1978; he would have been a busy man, however, in court one day facing the criminal charges brought by the U.S. Attorney and the next day at the V.A. undergoing termination from his position. The court is not unsympathetic to Mr. Hearne's dilemma, and while the penalty is perhaps harsh and could have been less, that matter is not for this court to decide in this case. The court may set aside penalties clearly too harsh and out of proportion, *Power v. United States,* 209 Ct.Cl. 126, 130, 531 F.2d 505, 507 (1976). However, in the present case there is no effected sanction to examine to see if it exceeded the permissible range of punishment.

The preceding allegation raised by plaintiff, that he was not provided ample opportunity to secure his defense, is but part of a larger argument regarding violations of his right to due process. Part of that argument has been addressed previously in this opinion in connection with the effect of simultaneous civil and criminal proceedings and its effect upon due process. Although it may appear to needlessly trample the same ground, plaintiff has raised the point that the various infirmities in the removal affected the validity of what Mr. Hearne refers to as "his resignation and his removal." Simply stated, this court has held that even if there were significant errors in the removal process, the court need not consider the effect of those errors because the act of removal was a nullity, *nunc pro tunc,* in that it was withdrawn by the V.A.

when it learned that Mr. Hearne had resigned before he was, or could be removed. Even the federal government, with the panoply of powers it holds vis-a-vis its employees, cannot remove an employee from his job if the employee has previously effectively resigned his position. Determining the due process contention outside of the voluntariness question would require this court to speculate what *might* have happened in the removal proceeding, or how it *might* have affected the defense of the criminal proceeding, etc. The court will not, and cannot, base a holding upon speculative injury to the plaintiff. That is the underlying idea of those cases, from *Sanitary Manufacturing Co.* to *Kordel* to *Dresser*, all of which hold that due process is not infringed merely because an accused person is subjected, without his consent, to an administrative hearing involving matters in a pending criminal proceeding. *See also Dresser*, 628 F.2d at 1376, footnote 21. Thus, the courts have generally refused to mandate automatic deferrals of civil proceedings absent "special circumstances" turning on the nature and effect of the alleged violation of due process.

 Finally, plaintiff alleges that his resignation was invalid because he was unable to choose the effective date. The letter of resignation stated:

Please, accept my resignation from the Staff of the Veterans' Hospital.
Oct. 5, 1978

Byrl Hearne

Mr. Hearne would like at this time to arbitrarily post-date his resignation to some later date and argues that he was forced to resign effective October 5, 1978 against his will.

As stated in the Federal Personnel Manual Supplement, an employee who wishes to resign may set a date for resignation:

(4) *Employee does not set effective date.* An action is involuntary if the employee does not set the effective date. The agency may point out the desirability of another date, but it may not arbitrarily set an earlier or later date and have the action remain a voluntary one.

FPM Supp. 752-1, subchapter S1-2b(4). According to the guidelines followed by the V.A., an employee is free to set a date of resignation. *Christie*, 207 Ct.Cl. at 340, 518 F.2d at 588. In the *Christie* case, an employee signed a pre-printed form with the date set at the top. This was enough, in the court's view, to have ratified that date as the date of resignation. Here the employee's resignation was in handwriting, with the signature being below the date. This was enough to establish the date of resignation. Indeed, had the V.A. unilaterally assigned another date conflicting with Mr. Hearne's self-selected date of resignation, it would have violated the above-cited provisions in the Federal Personnel Manual Supplement which allows the employee to choose the relevant date.

At the hearing below, as well as in the proceeding before this court, plaintiff presented no law giving the V.A. the ability to select another resignation date for him, nor does Mr. Hearne specify another date that he believed should have been the resignation date. In light of this evidence, the finding by the MSPB that the resignation was effected as of October 5, 1978 was neither arbitrary nor capricious.

## CONCLUSION

 For the above-stated reasons, the court upholds the disposition of the appeal by the Merit Systems Protection Board regarding the force and effect of the plaintiff's resignation. On these cross-motions for summary judgment, defendant's motion is granted and the plaintiff's motion is denied. The clerk is directed to enter judgment for defendant and to dismiss the case.

IT IS SO ORDERED.