Otto H. LIZUT, Petitioner,

v.

**DEPARTMENT OF THE ARMY,**
**Respondent.**

No. 83–786.

United States Court of Appeals,
Federal Circuit.

Sept. 28, 1983.

Robert M. White, Norfolk, Va., argued for petitioner.

Randall B. Weill, Washington, D.C., argued for respondent. With him on brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Donnie Hoover, Washington, D.C.

Before FRIEDMAN, RICH, and BALDWIN, Circuit Judges.

BALDWIN, Circuit Judge.

This appeal is from a decision of the Merit Systems Protection Board (board) dated November 30, 1982, in which the board upheld the removal of petitioner from his position with the Department of the Army (agency). Petitioner challenges the board's ruling that the agency had no obligation to file for disability retirement on his behalf instead of instituting a removal action. He also contends that the presiding official improperly refused to consider claims that the agency wrongfully refused to take steps necessary to process his request for early optional retirement and wrongfully failed to promote him. Finally, petitioner appeals from the board's determination that there was no causal connection between petitioner's removal and petitioner's filing of grievances that would warrant overturning the removal action. We vacate-in-part, affirm-in-part, and remand for further consideration.

### Background

Petitioner was employed as an engineer by the agency from 1967 until his removal was made final in January, 1981. The behavior leading to petitioner's removal began as early as 1977 and included failure to perform work, failure to meet work deadlines, constant complaining, repeated conflicts with co-workers, threatening conversations with other personnel, and chronic misuse of sick and annual leave. After repeated efforts to correct petitioner's behavior between 1977 and 1979, Mr. Geckle, petitioner's supervisor, concluded that petitioner was not fit for duty. Mr. Geckle then sought to require petitioner to take a fitness for duty examination. Since a psychiatric examination was contemplated, Mr. Geckle presented information about petitioner to an agency panel as required by 5 CFR 831.1203(a) (1979). After considering reports on petitioner's conduct, a psychiatrist on the panel concluded that petitioner was not well or behaving in a normal fashion. The panel accordingly decided petitioner should obtain a physical examination to identify any organic cause of the unacceptable behavior and that if no organic cause was identified, a psychiatric examination would be required. After the panel meeting, petitioner was placed on enforced leave status from October 1, 1979 until May, 1980.

The physical examination, completed in 1980, revealed no organic problem hindering petitioner from performing his duties, but the examining doctor noted that psychiatric capability was another matter entirely and recommended petitioner be seen by a psychiatrist. When petitioner was allowed to return to work in May, 1980, he was told to submit to a psychiatric examination. Petitioner refused.

After returning to duty, petitioner's behavior worsened. Mr. Geckle described petitioner's conduct on the job as intolerable. Written reports on petitioner's job performance after May, 1980, indicate he did virtually no work at all despite encouragement from agency personnel for him to complete his assigned duties. Removal of petitioner was formally proposed by the agency in August, 1980, and made final in January, 1981.

Other events occurred between 1977 and 1981 that have given rise to disputes presented in this appeal. In view of our disposition of these disputes, however, only brief explanation of these events is warranted. Between 1977 and 1981, petitioner urged the agency to apply to the Office of Personnel Management (OPM) for a determination that the agency was undergoing a

major reorganization, reduction in force, or a major transfer of function. If OPM determined the agency was undergoing such a major alteration, petitioner might then have been able to apply for favorable early retirement benefits available to qualified employees in the agency. The agency did not apply to OPM for such a determination, thereby precluding petitioner from even applying for early retirement benefits. A second event complained of by petitioner is the agency's failure to promote him during the 1977 to 1981 period, from GS–12 to GS–13. Finally, petitioner filed numerous grievances during the 1977–1981 period and now contends that his removal was a prohibited personnel practice since it was in reprisal for filing grievances.

In petitioner's appeal from the agency's actions, a presiding official concluded that the agency had reason to believe that petitioner's conduct could be the product of a mental disability and held the agency was therefore obligated to apply for disability retirement on behalf of petitioner rather than initiate a removal action. The agency's failure to fulfill this duty mandated reversal of the removal action, according to the presiding official. In view of this conclusion, the presiding official did not consider whether petitioner's removal was in reprisal for filing grievances. The presiding official did, however, decide that the board had no jurisdiction to consider the agency's refusal to process petitioner's early retirement request or the assertion that the agency wrongfully failed to promote petitioner from GS–12 to GS–13.

Only the government appealed to the board from the presiding official's initial decision, urging reversal of the ruling that the agency was obligated to apply for disability retirement for petitioner in lieu of instigating a removal action. The board found that petitioner's behavior could be interpreted by a reasonable person as a poor attitude coupled with a disagreeable temperament. The board said "nothing in the record * * * would substantiate a finding that he [petitioner] was mentally disabled for purposes of employment * * *. We further find nothing in the record that sug-

gests that the agency had reason to conclude that such a disability uncontrovertedly [sic] existed." The board therefore held the agency had no obligation to apply for disability retirement for petitioner and reversed the presiding official on that issue. The board then found it necessary to determine whether the removal was in reprisal for the numerous grievances filed by petitioner. The board concluded that, in light of the flagrant nature of petitioner's behavior and the absence of threats to fire him, no causal connection was established between the filing of grievances and the removal action. The board held that the removal action was appropriate.

Since petitioner did not appeal any part of the presiding official's decision, the board did not pass on the agency's refusal to process an application for voluntary retirement benefits or on the agency's failure to promote petitioner. Petitioner filed a timely appeal to this court from the board's decision.

### OPINION

The board held the agency was not obligated to file for disability retirement because it found there was no evidence at all to substantiate mental disability and because the agency did not have reason to conclude a mental disability uncontrovertibly existed. The board's reasoning ties the agency's obligation to file for disability on behalf of an employee to uncontroverted knowledge that a mental condition is the cause of an employee's disability. The regulation governing the agency's obligation to file for disability retirement states:

§ 831.1203 *Agency Action*

(c) *Disability standards. An agency shall file an application for the disability retirement of an employee only when it certifies that:*

(1) *In its opinion the employee is totally disabled for useful and efficient service* in the grade or class of position occupied (as shown by his performance or by a job-related factor) *because of disease or injury not due to vicious habits, intemper-*

*ance, or wilfull misconduct* on his part within 5 years before becoming so disabled; and

(2) There is no suitable position vacant for which the employee is qualified and which he is willing to accept instead of retirement.

5 CFR 831.1203(c) (1980) (emphasis added). The board's conclusion that the agency bore no obligation to file on petitioner's behalf because it could not uncontrovertibly have known petitioner suffered from a mental disability rests on an interpretation of section (c)(1), quoted above. Section (c)(1) sets forth two prerequisites to the existence of an obligation on the agency to file a disability retirement application. The first is that in the agency's *opinion,* the employee is totally disabled from useful and efficient service in the occupied position. The second requirement is that in the agency's *opinion,* the disability exists because of disease or injury not due to vicious habits, intemperance, or willful misconduct.

■ It is apparent in this case that the first requirement of (c)(1) is satisfied. Petitioner's own supervisor firmly stated that petitioner's conduct after returning to duty in 1980 was "intolerable." Written reports concerning petitioner's job performance during this same period of intolerable conduct establish he did virtually no work at all. The controversy, therefore, turns on whether the agency's *opinion* regarding the cause of petitioner's disability must be based on evidence that uncontrovertibly establishes a mental condition caused the disability or whether evidence giving the agency reason to believe a mental condition causes petitioner's disability is sufficient to satisfy the second requirement of section (c)(1). Our interpretation of the regulations as a whole leads us to conclude that the agency's obligation to file for disability retirement on behalf of an employee arises when the agency has reason to believe that the disability is caused by mental disease or injury not due to vicious habits, intemperance, or willful misconduct.

A related subsection of the involuntary retirement regulations gives the agency authority to direct an employee to take a physical or mental fitness examination when it "has reason to believe" that the requirements of (c)(1) have been satisfied. The regulation states:

§ 831.1203 *Agency action.*

(a) *Examination. When the agency has reason to believe an employee may be totally disabled within the meaning of paragraph (c)(1) of this section, and satisfactory medical evidence is not otherwise available, the agency may direct the employee to report for an examination.* However, in the case of an employee with a suspected mental or emotional illness when the examination being considered is psychiatric, two or three agency officials, including a manager or supervisor, a personnel official, and a medical officer if available, must agree, in the light of all available facts of the case, that such an examination appears to be necessary. * * When the refusal to submit to the examination appears to be the result of a mental, emotional, or nervous condition, and the employee does not want to participate in the selection of another medical examiner, the agency shall make a finding to this effect and continue to process the application for retirement on the basis of other available evidence.

In contrast, the language of (c)(1) does not expressly refer to the reason to believe standard. However, (c)(1) also does not clearly require the agency's opinion to be based on evidence that uncontrovertibly establishes a mental disability when the agency's obligation to file for disability retirement is at issue.

■ The employing agency does not decide whether disability retirement is appropriate. That decision is made by OPM after an application for disability is made. 5 CFR 831.1201(b) (1980). It is therefore OPM that decides whether the available evidence establishes with sufficient certainty that a mental condition is the cause of disability, not the employing agency. To avoid rendering OPM's functions redundant of the agency's actions, the employing agency must act on less certainty than OPM

in forming its *opinion* on which the obligation to file for disability retirement arises. The reason to believe standard serves as an appropriate test for determining when the agency's obligation to fulfill the administrative task of filing for disability retirement for an employee arises. Often, the only way to establish that a mental disability uncontrovertibly exists as a result of a mental condition is with a psychiatric examination. But the very mental condition causing disability may be what leads an employee to refuse a psychiatric examination. The regulations expressly contemplate this situation and require that:

> [w]hen the refusal to submit to the examination appears to be the result of a mental, emotional, or nervous condition, and the employee does not want to participate in the selection of another medical examiner, *the agency shall make a finding to this effect and continue to process the application for retirement* on the basis of other available evidence.

5 CFR 831.1203(a) (1980). This provision indicates that an agency's responsibility to process retirement applications, including those filed by the agency on behalf of an employee, should not hinge on the availability of medical evidence uncontrovertibly establishing the mental disability.

▮ Even though the board applied the wrong standard, we must determine the correctness of the board's assertion that nothing in the record would substantiate a conclusion that mental disability, instead of willful misconduct, led to petitioner's inability to perform useful and efficient service. Here, the agency's own action in ordering a psychiatric examination conclusively establishes that the agency had reason to believe the requirements of (c)(1) were satisfied. As noted earlier, an agency may direct a physical or psychiatric examination only when it has reason to believe that the requirements of (c)(1) have been met. In this case, a panel of agency personnel, including one psychiatrist, concluded that a physical and a psychiatric examination were warranted. The agency's insistence on a physical and psychiatric examination could only occur after the agency had reason to believe

the requirements of (c)(1) were satisfied. The board's assertion that no evidence substantiates the existence of a mental disability is contradicted by the agency's own conduct. If there was no evidence to substantiate disability as defined in (c)(1) then the agency could not have ordered a fitness examination.

Despite these errors by the board, we vacate rather than reverse its conclusion that the agency was not obligated to file a disability application. The regulations impose an obligation to file a disability application only after the requirements of both (c)(1) *and* (c)(2) have been met. Section (c)(2) requires that the agency certify that:

> (2) There is no suitable position vacant for which the employee is qualified and which he is willing to accept instead of retirement.

5 CFR 831.1203(c)(2) (1980). The board and the agency concentrated on the requirements of paragraph (c)(1) and therefore did not decide if the requirements of (c)(2) were satisfied. Since the present record does not refer to whether the requirements of (c)(2) were met, we cannot conclude that the agency was in fact obligated to file for disability retirement for petitioner. We must instead vacate the board's decision regarding the agency's obligation and remand for a decision on whether the requirements of (c)(2) were met.

▮ In the present appeal, petitioner also contends the agency's refusal to take steps necessary to process his request for early optional retirement and the failure to promote him to GS–13 must be considered by the board. This same contention was presented by petitioner to the presiding official who dismissed the portion of petitioner's appeal concerned with these claims. Only the government appealed to the board, raising the issue of the agency's obligation to file for disability retirement. Petitioner did not appeal any aspect of the presiding official's decision. In fact, in response to the agency's petition for review of the presiding official's decision, petitioner's attorney said:

[T]he Presiding Official made no erroneous interpretation of statute, regulation or prior case law with respect to the initial decision in this case.

By choosing not to appeal from the presiding official's decision, petitioner failed to exhaust his administrative remedies with respect to his claims based on the agency's refusal to process his request for an early optional retirement and the failure to promote him to GS–13. Allowing a party to withhold important issues from the board and later present them to this court would undermine the board's authority. *Haynes v. United States,* 418 F.2d 1380, 1383, 190 Ct.Cl. 9 (1969). Therefore, petitioner's early optional retirement and promotion claims will not be considered by this court for failure to exhaust administrative remedies.

■ Petitioner also contends that his removal was in reprisal for petitioner's use of grievance procedures. The board found there was no causal connection between the filing of petitioner's grievance and petitioner's removal. Setting aside the problem of the agency's obligation to apply for disability retirement on petitioner's behalf, the record is replete with evidence warranting removal of petitioner. His failure to perform work and chronic misuse of leave are only two examples of conduct that could justify a removal recommendation. No one in the agency threatened to fire petitioner for filing grievances. In light of the significant body of evidence supporting the board's conclusion, we find no reversible error in this portion of its decision. We therefore affirm the board's ruling in favor of the agency on this issue.

Accordingly, we *vacate* the board's decision on the disability retirement in lieu of removal issue and *remand* for further consideration consistent with this opinion. Petitioner's contentions regarding the agency's early optional retirement and promotion decisions are not considered for failure to exhaust administrative remedies. Finally, the board's decision that there was no causal connection between petitioner's filing of grievances and his removal is *affirmed.*

VACATED–IN–PART, AFFIRMED–IN–PART, AND REMANDED.