**Timothy D. DUNCAN, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**Appeal No. 86–671.**

United States Court of Appeals, Federal Circuit.

July 22, 1986.

---

Lee A. Morrison, San Diego, Cal., submitted for petitioner.

Anita Marshall, of the Merit Systems Protection Bd., Washington, D.C., submitted for respondent. With her on brief were Lewellyn M. Fischer, Acting General Counsel and Mary L. Jennings, Associate General Counsel for Litigation, Merit Systems Protection Bd., Washington, D.C.

Before MARKEY, Chief Judge, DAVIS and SMITH, Circuit Judges.

DAVIS, Circuit Judge.

This is the somewhat unhappy tale of a federal employee apparently whipsawed between the Merit Systems Protection Board (MSPB or Board) and the arbitrator, both deciding that they would not hear petitioner Duncan's case on the merits since he had also sought relief from the other tribunal, 29 M.S.P.R. 72. Because the MSPB was not responsible for placing petitioner in this predicament, we affirm its decision with the hope that in the future better steps will be taken by employing agencies and unions to counsel employees against taking the unfortunate course Duncan pursued here because of mistaken advice.

## I.

Duncan was a city carrier with the United States Postal Service in San Diego, California. He was charged with threatening his supervisor (verbally and physically) and with using profane language. After responding to the charges, he was notified, on June 26, 1984, that he would be removed, effective July 2, 1984. This removal notice told him that he could appeal to the MSPB (within 20 days after July 2, 1984), but that if he so appealed to the MSPB "you thereby waive access to any procedures under the National Agreement beyond Step 3 of the grievance-arbitration procedures." Petitioner timely appealed to the board on July 23, 1984. Some weeks later, his representative filed a document (dated September 14, 1984) with the MSPB stating that petitioner "has elected to proceed with his appeal under the grievance procedure available to him through the National Letter Carriers Union," and also another document (dated the next day, September 15, 1984) certifying "that a letter terminating [petitioner's] appeal rights under the Merit Systems was mailed in the regular course of the U.S. Mails, Sept. 15, 1984." In response to these documents, the Board's presiding official, treating them as a motion to withdraw Duncan's

appeal, granted the motion and dismissed the appeal (on October 12, 1984).

Petitioner then continued with his grievance proceeding and a hearing was held (on December 4, 1984) before the arbitrator, including the admission of evidence on the merits. However, the employing agency (the Postal Service) argued at that hearing that the arbitrator was without jurisdiction because the appeal to the MSPB, even though withdrawn, prohibited the arbitrator from assuming jurisdiction. Shortly after the hearing, the arbitrator accepted the agency's argument and held that he was without jurisdiction because of the prior appeal to the MSPB. Duncan was notified of this determination on December 13, 1984.

Petitioner then sought (by letter of December 19, 1984) to reopen and reinstate his Board proceeding. The MSPB presiding official decided that, as presiding official, he had no authority to take that action but that Duncan should petition the full Board to reopen the case. Duncan did so, but the full Board denied his petition for review. Its holdings were that (a) it had jurisdiction of the matter; (b) petitioner could proceed before the MSPB either by filing a new appeal or by establishing a basis for the Board to reopen its prior order dismissing his first appeal; (c) if the present proceeding were to be considered a new appeal, it would have to be dismissed as filed much more than the allowable 20-day period for appeal after the agency's original removal action (*i.e.*, five months after that date), and because pursuit of his grievance in another forum does not constitute "good cause" for such delay; (d) if the present proceeding is deemed a motion to reopen the original appeal, the Board declined to take such action because petitioner deliberately withdrew his appeal "with the clear intention of proceeding under the negotiated grievance procedure" and he and his representative should have known that the mere existence of the initial MSPB appeal—even though withdrawn—could have led the arbitrator to determine that he had no jurisdiction.

## II.

■ It is clear, first of all, that petitioner did actually withdraw his appeal from the MSPB and that the Board reasonably so interpreted his actions. Though the first of his documents (in September 1984) merely said that Duncan "has elected to proceed with his appeal under the grievance procedure available to him through the National Letter Carriers Union," the accompanying certificate of service attested "that a letter terminating [petitioner's] appeal rights under the Merit Systems was mailed in the regular course of the U.S. Mails, Sept. 15, 1984." *See* Part I, *supra*. The presiding official properly read these documents as a withdrawal of Duncan's appeal, and dismissed the case. Petitioner did not protest that MSPB action until the proceeding reached this court.[1] Before the Board he consistently characterized his earlier actions as a withdrawal of his appeal to the MSPB. He referred to his September 1984 documents as withdrawing that MSPB appeal in his letter of December 19, 1984 first seeking reopening ("my notification of withdrawl [sic] on September 15, 1984"); then in his motion to reinstate his appeal (dated January 10, 1985) ("I then instructed [his representative] to make such a withdrawl [sic], and she in fact did so on September 14, 1984"); and again in his petition for review by the full Board ("The Board issued an initial decision dismissing my appeal in view of the withdrawl [sic] on October 12, 1984. ... The presiding official granted my petition for withdrawl [sic] based on my request and noting my intention to proceed with Union arbitration."). In addition, petitioner concedes here that (a) he knew he could not have two hearings, one before the arbitrator and another before the MSPB; and (b) he thought, when the union certified his case for arbitration, that he would have a hearing before the arbitrator on the merits.

The record thus proves indisputably that petitioner in fact withdrew his appeal, and intended to do so. In acting as petitioner wanted, the presiding official was not in any way negligent, nor did he act improperly.

## III.

■ It follows that the only issue left in this case is whether the full Board abused its discretion in refusing to find "good cause" when petitioner sought to reopen his earlier MSPB case, or alternatively to file a new MSPB appeal, after the arbitrator had held that arbitration was precluded simply because Duncan had filed an appeal with the MSPB.

Petitioner urges as "good cause" that he was unlettered in the law, wished to assure that he would receive a hearing on the merits of his defense to the agency charges, and followed the route he was advised to take. He says that (i) he was told that, to have an arbitration hearing, his union would have to certify his case for that proceeding; (ii) to assure a hearing, in the event he was not certified, he filed his appeal with the MSPB; (iii) he did not know that, if he filed that appeal but later withdrew it in order to proceed (after certification) with arbitration, he would be barred from arbitration; and (iv) after union certification, he was advised by his non-lawyer representative to withdraw his appeal from the MSPB—which he did.

There are twin difficulties with this position. The first is that petitioner was expressly told by his agency's removal letter that if he appealed to the MSPB he would thereby waive access to the grievance-arbitration procedures. This very specific notice charged him with making inquiry whether he could nevertheless appeal safely to the Board and then withdraw that appeal, without jeopardizing his arbitration rights. However, he merely assumed that he could withdraw without such potential harm. Apparently, his non-lawyer representative concurred or may even have suggested that course. But it is settled that

---

1. The usual rule is that a petitioner cannot raise before this court an issue which could have been, but was not, raised before the MSPB.

*Synan v. Merit Systems Protection Board,* 765 F.2d 1099 (Fed.Cir.1985); *Lizut v. Department of the Army,* 717 F.2d 1391 (Fed.Cir.1983).

federal personnel are bound by the actions of their freely selected representatives or agents. *Massingale v. Merit Systems Protection Board,* 736 F.2d 1521, 1523 (Fed. Cir.1984) (union advice); *Johnson v. Department of the Treasury,* 721 F.2d 361, 365 (Fed.Cir.1983) (legal advice). Perhaps, if petitioner had asked a lawyer (or someone else familiar with labor arbitration, such as the personnel office of his agency), he would have been warned—because of the then existence of prior arbitral decisions on the point—of the peril of appealing to the MSPB. In any event, *Massingale, supra,* in which a federal employee relied (before he appealed to the MSPB) on his union's advice that arbitration could be had, only to find out from the arbitrator that the particular matter was not arbitrable, is very comparable to this case. There, we refused to reject the Board's determination that there was no "good cause" for the delay.

In these circumstances, we cannot say that the Board abused its discretion in refusing to find "good cause" either for a delayed appeal to the MSPB or for a re-opening of the initial appeal.

IV.

█ Though the MSPB cannot be faulted and we consider the result we reach to be correct, that resolution is a nagging one. Duncan has not had and will not have any hearing on the merits of his case. If the rule is to continue that arbitral proceedings will be aborted even by a protective appeal withdrawn from the MSPB prior to any significant activity in that tribunal,[2] we think that the employing agencies and the unions should advise employees, more precisely, of the dangers of appealing to the MSPB, even the taking of a protective appeal to preserve their rights to a hearing if the union should fail or refuse to certify them for arbitration under collective bargaining agreements.

AFFIRMED.

2. We do not have before us for review the arbitrator's decision in this case, but we have some doubt whether it is necessary to refuse arbitration in this situation of a protective appeal to the MSPB before union certification has been obtained—a protective appeal which is withdrawn immediately after certification.