**NATIONAL POST OFFICE MAIL HANDLERS, WATCHMEN, MESSENGERS AND GROUP LEADERS DIVISION OF the LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civ. A. No. 85–K–1846.

United States District Court, D. Colorado.

March 29, 1987.

Joseph M. Goldhammer, Brauer & Buescher, Denver, Colo., for plaintiff.

James R. Cage, Asst. U.S. Atty., Denver, Colo., William B. Peer, Barr & Peer, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action to vacate an arbitration decision upholding the defendant's termination of Edward Cavanagh, a mail handler and member of the plaintiff union. Jurisdiction is alleged under 39 U.S.C. § 1208(b), § 409(a) and 28 U.S.C. § 1331. This question is not disputed, and I hold jurisdiction lies. *See, e.g., American Postal Workers Union, AFL–CIO v. United States Postal Service,* 766 F.2d 715, 720 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986).

As a threshold matter, defendant directs my attention to *Pittsburgh Metro Area Postal Workers Union v. United States Postal Service,* 463 F.Supp. 54, 55–57 (W.D.Pa.1978), *affirmed,* 609 F.2d 503 (3d Cir.1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1598, 63 L.Ed.2d 785 (1980). In that case, defendant asserts the court held "[t]he local division of a national postal union does not have standing, under 39 U.S.C. § 1208(b), to bring an action to enforce the collective bargaining agreement." Defendant's Summarization Brief, at 11. Defendant next notes that "[w]hile the national union is named as plaintiff on the caption of the Amended Complaint, the address of the local union is set forth at the conclusion of that complaint and plaintiff has not submitted evidence demonstrating that at the time that this action was instituted, suit was filed under the authority of the national union. Thus, this action should be dismissed." *Id.*

Plaintiff has responded to this argument by filing a motion to strike the portion of defendant's brief which raises it. Plaintiff avers "[t]he address on the complaint is merely a mailing address for the receipt of mail in this area." Motion to Strike, at ¶ 4.

Until I ordered summarization briefs in this case, *see* order of February 20, 1987, defendant had raised the standing issue only as an ancillary point in the briefing. *See* October 1, 1985 Memorandum in Support of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, at 8, n. 2. No separate motion to dismiss on standing grounds was filed even though this case has, unfortunately, lain dormant for an inordinate amount of time. Moreover, as plaintiff attests, the record is devoid of evidence on the point contested. The parties have not even addressed the question of who bears the burdens of production and persuasion on such evidence. Plaintiff's motion to strike the standing argument is therefore granted.[1]

This controversy has its genesis in an automobile accident on June 1, 1982. Mr.

---

1. I also note Mr. Cavanagh designated the union as his representative. 5 C.F.R. § 831.1202(a) (1983). In any event, my disposition of the pending motions on the merits moots defendant's standing argument.

Cavanagh sustained serious injuries to his feet on that date. After spending the summer recuperating from the accident, Mr. Cavanagh applied for temporary assignment to light duty, off his feet. The Postal Service approved this application on September 21, 1982. This procedure was conducted in accordance with Article 13, Section 13.2, Paragraph A of the collective bargaining agreement between plaintiff and defendant. The agreement was in force from July 21, 1981 until July 20, 1984.

Mr. Cavanagh continued on light duty for some time. In June 1983, he reported to Dr. Donald M. Olson for a physical fitness for duty examination. Dr. Olson was the Postal Service's area medical officer. Mr. Cavanagh was referred to Dr. Olson by George Ufema, the Postal Service's injury compensation specialist. Following receipt of Dr. Olson's report, Deborah Jones, as acting injury compensation specialist, and Mr. Ufema made efforts to discover whether Mr. Cavanagh's disability was permanent. These efforts included contact between Ms. Jones and Dr. Olson, Mr. Ufema and Dr. Olson, Mr. Ufema and Dr. Harold Yocum, and Drs. Olson and Yocum. Dr. Yocum was Mr. Cavanagh's treating physician.

As a result of these contacts, the Postal Service concluded Mr. Cavanagh's injuries were permanent. On October 14, 1983, Ms. Jones sent the following letter to Mr. Cavanagh:

Medical certification has been received by the Denver Bulk Mail Center indicating that your off-the-job injury has caused a permanent disability to your leg. Subchapter 563.23 of the Employee & Labor Relations Manual (ELM) provides the procedures for disability retirement. In addition, on Wednesday, October 12, 1983, Injury Compensation Specialist George Ufema discussed with you the option of applying for disability retirement.

It is requested that you advise the Denver BMC by no later than Friday, October 28, 1983 as to whether you plan to apply for disability retirement.

According to the Postal Service, Mr. Cavanagh did not respond to this communication. On October 28, 1983, Mr. Ufema mailed another missive to Mr. Cavanagh. This letter began by recounting the efforts which had been made to review with Mr. Cavanagh the "procedures for applying for permanent light duty and disability retirement." The letter continued:

You requested that Management identify a permanent light duty assignment for you prior to submitting a request for such an assignment. Article XIII Section 2.B.1. of the 1981 National Agreement provides the procedures for applying for a permanent light duty assignment. Management will be unable to identify a permanent light duty assignment without a written request being initiated by you first.

If you wish to be considered for a permanent light duty assignment, we must have a request in writing no later than Wednesday, November 2, 1983. Otherwise, Management will have no other alternative but to move for your separation for being physically unable to perform the duties of the position of Mail Handler.

According to the defendant, Mr. Cavanagh never applied for a permanent light duty assignment. On December 22, 1983, the Postal Service therefore issued a written notice of removal in no less than 30 days. Mr. Cavanagh responded to this notice on December 30. In that response, he attempted to refute the allegations of permanent disability. He also claimed to have answered the Jones letter of October 14. Mr. Cavanagh stated he believed the Postal Service's actions against him were based on his participation in union activity. These replies, however, were unavailing. By written notice dated January 30, 1984, Mr. Cavanagh was removed from his job effective February 1, 1984.

The removal notice advised Mr. Cavanagh of his option to take an appeal to the Merit Systems Protection Board or to file a grievance under the grievance-arbitration procedure of article 15 of the collective bargaining agreement. Mr. Cavanagh

chose the latter alternative. The plaintiff filed a grievance on his behalf, but it was denied at lower administrative levels. The case was ultimately heard by the arbitrator. On May 15, 1985, the arbitrator issued a decision denying the grievance, holding the Postal Service had just cause for terminating Mr. Cavanagh, holding the termination was unrelated to Mr. Cavanagh's union activities, and holding the Postal Service did not violate the requirements of reasonable accomodation to a handicapped employee under 5 C.F.R. § 1613.701 *et seq.* and the United States Office of Personnel Management's Handbook on Reasonable Accomodation. This lawsuit followed.

The amended complaint states two causes of action. The first claim is a broad-based attack on the arbitration award. Paragraph 16 of the amended complaint states as follows:

16. The award is not valid and enforceable and should be vacated for the following reasons:

a. The award does not draw its essence from the collective bargaining agreement;

b. The arbitrator violated his obligation under the agreement and exceeded his authority under the agreement by making a determination that Mr. Cavanagh was disabled when the exclusive authority for such a determination initially is delegated to the Office of Personnel Management by both the collective bargaining statute and by statute;

c. The arbitrator dispensed his own brand of industrial justice by failing and refusing to follow the dictates of federal law as directly incorporated into the collective bargaining agreement;

d. The award is contrary to the public policy embodied in 5 U.S.C. § 8337 prohibiting the discharge of handicapped

employees capable of performing useful and efficient service for the Postal Service in some capacity; and

e. The award is contrary to the public policy embodied in 29 C.F.R. 1613.701, *et seq.*, as incorporated into the collective bargaining agreement in that Mr. Cavanagh was not afforded reasonable accommodation as a handicapped person qualified to perform efficient service for the Postal Service.

The second claim for relief states:

The Postal Service violated Mr. Cavanagh's rights under 5 U.S.C. § 8337 and implementing regulations, which rights exist independently of the 1981 agreement, and which rights are enforceable regardless of the arbitration award referred to above. The Postal Service violated said rights by discharging Mr. Cavanagh without exhausting the involuntary retirement procedures in 5 U.S.C. § 8337 and implementing regulations.

The crux of the complaint is the defendant's alleged failure to comply with the requirements of 5 U.S.C. § 8337. *See* Amended Complaint, ¶s 7, 8, 9, 11, 12, 14. The second claim, which alleges a violation of that statute separate and apart from the collective bargaining agreement's incorporation of the statute, *see* Article 21, Section 21.3, was added on October 18, 1985. The amendment is an apparent attempt to avoid the stringent standard of judicial review which defendant invoked in its October 1, 1985 motion for dismissal or summary judgment. The first claim is a mere concatenaton of jargon alleging that 5 U.S.C. § 8337 was not followed.[2] I find both claims rest on the same reading of 5 U.S.C. § 8337.

The case is before me now on cross-motions for summary judgment.[3] Plaintiff's

---

2. The only subparagraph of the first claim which arguably states a claim in its own right is subparagraph (e). However, § 1613.704 received only passing treatment in plaintiff's briefs. Plaintiff merely cited § 1613.704 to provide inferential support for its arguments under 5 U.S.C. § 8337. *See* Plaintiff's Brief in Support f Motion for Summary Judgment, at 20.

3. Defendant filed its motion for dismissal or summary judgment on October 1, 1985. Plaintiff followed with its own motion for summary judgment on October 18, 1985. Because defendant's motion presents matters outside the pleadings, and since plaintiff has been given reasonable opportunity to respond to this material, defendant's motion shall be treated as a Rule 56 motion for summary judgment. Fed.R.Civ.P. 12(b). I will therefore apply the standards of

motion contends 5 U.S.C. § 8337 requires that an employee with at least five years service[4] may not be separated for disability, but must be retired instead. Brief in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, at 13. Plaintiff argues the arbitrator improperly deprived the Office of Personnel Management of its sole statutory authority to determine the question of whether Mr. Cavanagh was permanently disabled. *Id.* at 14.

The applicable subsection of the statute in question, 5 U.S.C. § 8337, is subsection (a). In pertinent part, that subsection reads:

> An employee who completes 5 years of civilian service and has become disabled shall be retired on the employee's own application or on application by the employee's agency. Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service. For the purpose of the preceding sentence, an employee of the United States Postal Service shall be considered not qualified for a reassignment described in that sentence if the reassignment is to a position in a different craft or is inconsistent with the terms of a collective bargaining agreement covering the employee.

Plaintiff avers "[t]he case law and other authorities applicable at the time of Cavanagh's discharge are unanimous in requiring that a disabled employee with. five or more years of service be the subject of a Civil Service Retirement and not discharged. This argument is thoroughly

decision applicable on a motion for summary judgment. *See Westinghouse Electric Corporation v. Nielsons, Inc.,* 647 F.Supp. 896, 897 (D.Colo.1986).

briefed in part II(A) in the plaintiff's brief in support of its motion for summary judgment." Plaintiff's Summarization Brief, at 5.

The cases plaintiff originally cited in support of its proposition that the Postal Service was obligated to retire Mr. Cavanagh under this statute rather than separate him through removal are: *Anderson v. Morgan,* 263 F.2d 903 (D.C.Cir.1959), *cert. denied,* 361 U.S. 846, 80 S.Ct. 99, 4 L.Ed.2d 84 (1959); 39 Comp.Gen. 89 (1959); *Lizut v. Department of the Army,* 717 F.2d 1391 (Fed.Cir.1983); *Sokoloff v. United States,* 4 Cl.Ct. 140 (1983); *Peele v. United States,* 3 Cl.Ct. 419 (1983); and *Hill v. Postal Service,* 4 M.S.P.B. 44, 3 MSPR 526 (1980). Plaintiff has additionally cited *Brink v. Veterans Administration,* 4 M.S.P.B. 419, 4 MSPR 358 (1980) and *Piccone v. United States,* 186 Ct.Cl. 752, 407 F.2d 866 (1969).

Independent research has disclosed additional cases which, at first blush, also support plaintiff's argument concerning the agency's obligation to retire Mr. Cavanagh under the disability statute. In *Asberry v. Postal Service,* 25 M.S.P.R. 314 (1984), the Merit Systems Protection Board reopened the record on its own motion "to consider whether the agency had an obligation to file for the appellant's disability retirement before proceeding with the removal action." *See also Tirado v. Department of the Treasury,* 22 M.S.P.R. 590 (1984), *affirmed,* 757 F.2d 263 (Fed.Cir.1985); and *Thompson v. Office of Personnel Management,* 21 M.S.P.R. 115 (1984).

Plaintiff's reliance on this line of cases is misplaced. Plaintiff has chosen to ignore one common element in these cases which renders them inapplicable to the instant controversy. That common element is the petitioning employee's mental condition. The Board set forth the law on this issue in *Asberry:*

> It is well settled that an agency may not remove an employee who meets the service requirements for disability retire-

**4.** It is undisputed that Mr. Cavanagh satisfies the five year requirement.

ment, *and whose mental condition impairs his judgment and ability to make decisions* without first advising him of his right to apply for disability retirement or applying for disability retirement on his behalf. *Anderson v. Morgan,* 263 F.2d 903 (D.C.Cir.), *cert. denied,* 361 U.S. 846, 80 S.Ct. 99, 4 L.Ed.2d 84 (1959), and 39 Comp.Gen.U.S. 89 (1959); *Hill v. U.S. Postal Service,* 4 M.S.P.B. 44 [3 M.S.P.R. 526] (1980); *Hensley v. Department of the Army,* 4 M.S.P.B. 285 [4 M.S.P.R. 207] (1980); *Jarze v. Department of the Air Force,* 4 M.S.P.B. 247 [4 M.S.P.R. 164] (1980); *Rolig v. Department of the Navy,* 8 M.S.P.B. 177 [8 M.S.P.R. 502] (1981). *The agency's obligation to file for the employee exists when it has reason to believe he suffers a disability caused by mental disease or injury.* The agency opinion need not be based on evidence which incontrovertibly establishes a mental condition. *Lizut v. Department of the Army,* 717 F.2d 1391 (1983).

*Asberry,* 25 M.S.P.R. at 316 (emphasis added; footnote omitted).

■ Put succinctly, plaintiff has misinterpreted the statute. The agency does not have an obligation to file for retirement for *all* disabled employees who meet the statutory criteria. Rather, the agency's obligation arises *only* for those employees whose mental condition gives the agency reason to believe the disability is rooted in mental disease or injury. In such a situation, the employee's sense of judgment could well be impaired. To protect the rights of the impaired employee, the law requires the agency to file for retirement on the employee's behalf.

■ This precaution is obviously not necessary for an employee whose disability has no mental component. In this latter situation, the agency fulfills its § 8337 duty to a qualifying employee simply by informing him of his right to file for disability retirement. Once properly informed of his rights, it is the responsibility of that employee to make the personal decision whether to apply for the retirement, and to then actually file an application if the employee decides disability retirement would be commensurate with his personal plans.

This conclusion is supported by two arguments. First, as noted above, the line of cases cited above involves petitioners with some variety of mental disability. The cases which explicitly deal with this type of disability are legion: the Comptroller General's opinion; *Hill; Brink; Peele; Lizut; Asberry; Thompson;* and *Tirado. Anderson* is a very brief opinion, and does not reveal the nature of the appellees' disabilities.[5] *Sokoloff* contains some dicta which could be construed to support the assertion that the agency must institute disability retirement procedures "for physical or mental reasons," but that case was actually decided on grounds of possible mental impairment because of Sokoloff's longstanding nervous condition.[6] Finally, *Piccone* is simply inapplicable to the case at bar. In that case, the court held the government could not commence an action for separation while Piccone's appeal for disability retirement was still pending. Mr. Cavanagh never filed for disability retirement, so the *Piccone* problem never arose.[7]

---

5. *Anderson,* therefore, does not provide direct support for plaintiff's position. Indeed, *Asberry*'s citation of *Anderson* leads me to believe *Anderson* also involved mental disabilities. Even if the facts of *Anderson* were otherwise, however, my conclusion would remain unshaken. *Anderson* is an older opinion, and given the periodic upheavals which convulse the bedrock of rights of those who work for the federal government, I prefer to rely on more recent cases such as *Lizut.* Finally, I am not bound to follow the law of another circuit. I therefore decline to follow *Anderson* to any extent it is inconsistent with my holding today.

6. In fact, the *Sokoloff* court flatly stated "that an agency should not remove for disability reasons an employee whose *mental condition impairs his judgment and ability* without first applying for disability retirement on his behalf." *Id.,* 4 Cl.Ct. at 145 (emphasis added).

7. Indeed, the problem could not have arisen. Under 5 C.F.R. § 831.501(c) (1983), Mr. Cavanagh could have filed an application for disability benefits up to a year following his separation from the Postal Service. The *Sokoloff* court reached the same conclusion in n. 7 of its opinion.

Thus, my conclusion is more than amply supported by the case law.

Second, changes effected in the Code of Federal Regulations at the same time the Postal Service removed Mr. Cavanagh reflect the position that the agency's obligation to file for the employee only applies to employees who are unable to make the decision on their own. These changes were published, as a final rule, in 49 Fed.Reg. 1321, 1331 (January 11, 1984). 5 C.F.R. § 831.1203 was amended to read:

§ 831.1203 Basis for filing application

(a) An agency shall file an application for disability retirement of an employee who has five years of civilian Federal service under the following conditions:

(1) The agency has issued a decision to remove the employee;

(2) The agency concludes, after its review of medical documentation, that cause for the unacceptable performance, conduct, or attendance is due to disease or injury;

(3) The employee is institutionalized, or based on the agency's review of medical and other information, it concludes that the employee is incapable of making a decision to file an application for disability retirement;

(4) The employee has no personal representative or guardian; and

(5) The employee has no immediate family member who is willing to file an application on his or her behalf.

(b) When an agency issues a decision to remove and the conditions described in paragraph (a) of this section have not been satisfied but the removal is based on reasons apparently caused by a medical condition, the agency shall advise the employee in writing of his or her possible eligibility for disability retirement.

The new version of § 831.1203 did not become effective until February 10, 1984. 49 Fed.Reg. 1321. Since Mr. Cavanagh was removed effective February 1, 1984, the new regulation does not apply to him.[8] However, the regulation provides strong support for the proposition that for qualifying employees who are not mentally incapable of making a rational decision to file an application for disability retirement, the agency discharges its statutory obligation when it notifies the employee of his possible eligibility for disability retirement.

The record in this case is devoid of any hint of mental impairment on the part of Mr. Cavanagh. Plaintiff does not raise the issue of Mr. Cavanagh's mental capability or capacity for appreciation. In view of the legal analysis conducted above, I conclude 5 U.S.C. § 8337 is inapplicable to this case. Since plaintiff's complaint presumes this statute applies,[9] the complaint must be dismissed.

8. In 1983, 5 C.F.R. 831.1203(c) read as follows: (c) Disability standards. An agency shall file an application for the disability retirement of an employee only when it certifies that:
(1) In its opinion the employee is totally disabled for useful and efficient service in the grade or class of position occupied (as shown by his performance or by a job-related factor) because of disease or injury not due to vicious habits, intemperance, or wilfull misconduct on his part within 5 years before becoming so disabled; and
(2) There is not suitable position vacant for which the employee is qualified and which he is willing to accept instead of retirement. Plaintiff has failed to address the potential application of this regulation. The regulation must be interpreted in light of the case law on which plaintiff has relied. On that basis, I see nothing in the 1983 regulation which affects my analysis.
9. Mr. Cavanagh could have sought to sustain his refutations of permanent disability by exercis-

ing his rights under 5 U.S.C. § 8337 himself. He claims he did not do so, however, because "he wished to continue working for the Postal Service in a temporary, light-duty capacity." Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment, at 3. This assertion defies logic. Since the agency had no obligation to seek a determination from the Office of Personnel Management on his behalf, Mr. Cavanagh could have sought such a determination himself, as he was advised. Since he failed to do so, the agency may make its own disability determination, at least as to his ability to work if not to his entitlement to retirement benefits. My decision on this point is supported by *Garner v. Office of Personnel Management*, 22 M.S. P.R. 446 (1984) ("An employee may be not disabled enough to be entitled to disability retirement under 5 U.S.C. § 8337(a) despite employing agency's determination that the employee is too disabled to work").

IT IS ORDERED that plaintiff's motion for summary judgment is denied. IT IS FURTHER ORDERED that defendant's motion for summary judgment on both of plaintiff's two claims for relief is granted. The clerk is directed to enter judgment accordingly. Each party shall bear its own costs and fees.